In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00139-CR
______________________________


DANNY WAYNE MARTIN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Red River County, Texas
Trial Court No. CR00034


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

            Danny Wayne Martin appeals his conviction for the felony offense of retaliation. During a
taped telephone conversation with Chris Cabler, who was being held at the Red River County Jail
for community supervision violations, Martin threatened to "kill" and "stomp" Jeff Hines, who had
reported Cabler's connection to a string of burglaries to the police. A jury found Martin guilty of
retaliation and assessed punishment at six years' imprisonment. We affirm the trial court's judgment.
            The following issues are raised on appeal: 1) that Martin did not receive effective assistance
of counsel and 2) that there was legally and factually insufficient evidence to support Martin's
conviction for retaliation against a "witness" or that Martin threatened to murder a person in
retaliation for the person's status as a witness.
            Cabler called Martin from the Red River County Jail on February 4, 2003. The conversation
was taped as being a call from a prisoner at a correctional facility. The collect call message warned
the conversation was subject to being "recorded or monitored." Martin informed Cabler that a man
named Hines had been "snitching on [him]." During the conversation, Martin stated the following:
[Martin]: So I'm fixing to go hunt a businessman. I just called my mama a
while ago.
 
[Cabler]: Yeah.
 
[Martin]: I fixin [sic] to go handle a couple of business. Jeff Hines is one of
them.
 
. . . .
 
[Martin]: . . . What the [f---] does Jeff have on you? I want to kill him
anyway. 
 
[Cabler]: Jeff knows everything.
 
[Martin]: And how?
 
[Cabler]: I don't know. I guess some of them have been talking.
 
[Martin]: Where does Jeff live?
 
. . . .
 
[Martin]: Yeah, this Jeff Hines dude, I'm fixing to stomp his [a--]. I've been
wanting him since I've been back to Clarksville.
 
[Cabler]: Yeah, that's what you were telling me. 
 
[Martin]: I just hadn't seen him.
 
. . . .
 
[Martin]: . . . . Man, I'm fixing to go, but I called my mom, man, fixing to
do all this [sh--] right here.
 
[Cabler]: Uh-huh.
 
[Martin]: And my mom is going to send me on the first plane to Wyoming
after I do it all, so when you hear whatever you hear . . .
Martin also requested Hines' address, directions to his residence, and his telephone number from
Cabler during the conversation. Before the taped conversation, Officer James Groves had obtained
information from Cabler that Hines had a stolen pistol in his possession. On investigation, Groves
recovered the stolen pistol and took a statement from Hines implicating Cabler in a series of
burglaries. We will first address Martin's claim of ineffective assistance of counsel. We will then
address Martin's sufficiency points of error together.
1) Ineffective Assistance of Counsel
            Martin's ineffective assistance of counsel claim focuses on defense counsel's failure to object
to inadmissible evidence. Martin's thirteen arguments can be grouped into four general categories: 
A) irrelevant evidence, B) improper opinion testimony, C) improper closing arguments, and
D) improper admission of an irrelevant penitentiary (pen) packet. According to Martin, the
combined effect of these errors resulted in the jury convicting him for the burglaries and other bad
acts, rather than for retaliation. 
            Both the United States and the Texas Constitutions confer a right to effective representation
by counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10. If counsel's performance is
ineffective, the conviction cannot stand. The Texas Court of Criminal Appeals has held that the
Texas Constitution does not impose a higher standard than the Sixth Amendment. Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Hernandez v. State, 726 S.W.2d 53, 56–57 (Tex.
Crim. App. 1986). The Sixth Amendment standard, established by Strickland, requires a defendant
alleging ineffective assistance of counsel to show that his or her counsel's performance at trial was
deficient and that counsel's deficient performance prejudiced his or her defense. See Strickland v.
Washington, 466 U.S. 668 (1984); see also Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). An ineffective assistance of counsel claim cannot be based on a difference of opinion
concerning strategy. "[T]he defendant must prove, by a preponderance of the evidence, that there
is . . . no plausible professional reason for a specific act or omission." Bone, 77 S.W.3d at 836. 
            Various factors should be considered in determining whether counsel was effective, including
pretrial motions, voir dire examination, cross-examination, production of defense witnesses,
objections, final argument, post-trial procedure, and the degree of counsel's knowledge of the facts
surrounding the case. Moya v. State, 661 S.W.2d 325, 328 (Tex. App.—Corpus Christi 1983, no
pet.). A failure to object to inadmissible evidence is an act of omission that may give rise to
ineffective assistance of counsel. Alvarado v. State, 775 S.W.2d 851 (Tex. App.—San Antonio
1989, pet. ref'd). Martin argues that, throughout the trial, defense counsel allowed the State to offer
inadmissible evidence and to make improper arguments. 
A) Irrelevant Evidence
            Throughout the trial, irrelevant evidence was admitted without objection. Irrelevant
prejudicial testimony informed the jury that Martin had a criminal record. Martin argues that the
testimony concerning the string of burglaries and his friend Cabler's participation in such crimes was
irrelevant and prejudicial. Also, irrelevant statements were not removed from the tape recorded
conversation.
            First, irrelevant evidence was introduced which informed the jury that Martin had a criminal
record. During the testimony of Officer Groves, the following exchange occurred:
[State]: Now when you heard the statement about him going to kill
Mr. Hines, the defendant in this case was going to kill Mr. Hines, how did you feel?
 
[Groves]: I felt like Mr. Hines' life was in--was threatened, especially after
I looked at his record.

Numerous objections could be made to the question and the response. It was irrelevant as to how
Groves felt, and the answer informed the jury that Martin had a criminal history. It is well
established that a defendant is entitled to be tried on the accusation alleged in the indictment, rather
than a collateral crime or for being a criminal generally. Templin v. State, 711 S.W.2d 30, 32 (Tex.
Crim. App. 1986). An extraneous offense is not admissible unless the offense is relevant to a
material issue in the case, and the relevancy value of the evidence outweighs its inflammatory or
prejudicial potential. Turner v. State, 754 S.W.2d 668, 672 (Tex. Crim. App. 1988). The rules
preclude admission of evidence concerning other crimes, wrongs, or acts allegedly committed by the
defendant. Castaldo v. State, 78 S.W.3d 345, 348 (Tex. Crim. App. 2002). The statement is also
speculative and conclusory. The jury had already been presented with the tape and could conclude
for themselves whether Martin had threatened Hines. There is no plausible professional reason to
fail to object to the question posed to Groves or to fail to request the trial court to instruct the jury
to disregard Groves' statement.
            Second, Martin complains that his attorney allowed the State to elicit testimony from Cabler
concerning extraneous acts of Cabler. Martin contends this testimony prejudiced his defense. Cabler
admitted possession of stolen items, including guns and embalming fluid. Martin's attorney did
object to this line of questioning on the bases that Cabler should be allowed to consult an attorney
and be informed of his rights. Cabler and Martin were good and close friends. Martin contends that
the evidence of the burglaries allowed the jury to infer that Martin was involved in the burglaries. 
            Evidence of other crimes, wrongs, or acts allegedly committed by a third person, as well as
extraneous acts of the defendant is inadmissible. Id. at 348–49. Martin argues that the proper
objection would have been for relevance, which would force the State to establish that the evidence
had relevance apart from showing character. Martin argues that this evidence was offered to allow
the jury to infer that Martin was a thief and a drug user—crimes for which he was not charged. The
State argued in its closing argument that Martin was a burglar.
            The State argues that the testimony concerning the burglaries was not offered to prove that
Martin had a record, but rather to assist the jury's understanding of the events by providing a context
for the officer's subsequent actions. See Cano v. State, 3 S.W.3d 99, 110 (Tex. App.—Corpus
Christi 1999, pet. ref'd). Even if an objection had been made, the testimony would have been
admissible as proof of knowledge, absence of mistake or accident, plan or intent. Rule 404(b) of the
Texas Rules of Evidence provides that, while evidence of extraneous acts is not admissible to prove
the character of the accused, such evidence may be "admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or
accident . . . ." Tex. R. Evid. 404(b). Because this testimony, if believed, establishes the motive for
Martin's threat, the testimony concerning the string of burglaries would still have been admissible
even if Martin's counsel had objected.
            Third, defense counsel failed to object to irrelevant statements in the tape, which did not
pertain to the threatening of Hines. These statements concerned Martin's negative opinion of the
sheriff's department and other irrelevant evidence. These sections of the tape are slightly prejudicial. 
Trial counsel also failed to object to hearsay statements concerning statements given by various
witnesses to Officer Groves during his investigation of the various burglaries. 
B) Improper Opinions
            At various points in the trial, inadmissible lay opinion testimony occurred without objection. 
Such testimony includes witness' opinions that Martin had threatened Hines and that Martin had been
high on PCP when arrested. 
            The State asked Officer Groves whether he had any doubt that a threat was made, and Officer
Groves responded that he had no doubt Hines had been threatened. The testimony is as follows: 
[State]: Officer Groves, or Deputy Groves, do you have any doubt that a
threat was made to a witness by the criminal defendant in this case?
 
[Officer Groves]: No, I do not. 
Generally, the opinion of a witness is not admissible to interpret the meaning of acts, conduct, or
language of another. Rodriguez v. State, 903 S.W.2d 405, 410 (Tex. App.—Texarkana 1995, pet.
ref'd). Lay opinion testimony expressing conclusions in the terms of legal definitions should
ordinarily be excluded. Lum v. State, 903 S.W.2d 365, 369 (Tex. App.—Texarkana 1995, pet. ref'd). 
In addition, Cabler and Officer Groves testified that, on the tape, Martin threatened to kill Hines. 
Martin also contends the best evidence of the conversation was the tape itself, which was introduced
into evidence. The State argues that the statements were rationally based on Officer Grove's
perception of the witness and helpful to a determination of the facts in issue. See Tex. R. Evid. 701. 
The witness stated a legal conclusion from the facts and thus expressed impermissible opinions on
a mixed question of fact and law. 
            Martin also complains of Officer Groves' testimony that Martin had been high on PCP when
arrested. Officer Groves testified as follows:
Q[State]: . . . describe his physical appearance to the jury, please, when
you saw him.
 
                        A         [Officer Groves]: He appeared high.
 
                        QHigh?
 
AYes, he was very violent when he come in, cussing.
 
                        Q Was he abnormally strong?
 
AYes, sir.
 
                        QDo you know whether or not some drugs will do that to you?
 
AYes, sir.
 
QDo you know which drugs it is that will do that to you?
 
APCP.

Martin argues the conclusion that he was high on PCP was beyond the scope allowed by lay person
opinion testimony. There was no evidence that Martin had taken PCP, and the State did not offer
Officer Groves as an expert witness. Martin argues the testimony was purely speculative and
intended to show that Martin was a drug user. There was no evidence Martin was high on PCP other
than Officer Groves' opinion. This testimony was highly prejudicial and should have been objected
to.
C) Improper Closing Argument
            Martin complains of several improper closing arguments, which were not objected to. 
During closing argument at the guilt/innocence stage of the trial, the State argued:
And all of these burglaries across the county, breaking into people's houses, they
were all part of that and they were mad, so he's going to take care of business. He's
going to retaliate against folks, and make people not want to come forward, so crimes
won't be solved so they can go on and do their dirty business and break into your
houses and don't have to worry about it.

Martin argues that this argument encourages the jury to convict him for being a burglar, rather than
for retaliation. In addition, the use of the phrase "your houses" may appeal to the self-interests of
the jurors. At punishment, the State implied that Martin's sentence on a prior offense was too lenient
and urged the jury to give him a more severe sentence. The State stated:
Don't come up with some little number where he's back here in a year. You
heard him testify that he got a year sentence, and he was down there for seven
months. That's the way it is. Send him on down and let him stay there a while and
get him out of our system, out of our hair.

The State also argued that, "He needs to be out of our society because when he's in our society, he
breaks into buildings." Failure to object to an improper closing argument may be ineffective
assistance of counsel. See Valencia v. State, 946 S.W.2d 81 (Tex. Crim. App. 1997), modified sub
silencio, Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App. 1999). We cannot conclude, though,
that no professional reasons exist for failing to object to the above arguments. Martin's trial counsel
could have determined that the above arguments were pleas for law enforcement. Such a decision
would be a strategic decision intended to prevent alienating the jury by interrupting the prosecutor. 
Since plausible professional reasons exist for failing to object to these closing arguments, we cannot
conclude the failure to object resulted in deficient performance. 
D) Pen Packet
            Martin's trial counsel failed to object to the purported pen packet introduced without
fingerprint evidence. The State characterized the pen packet as "self-authenticating." Even if the
pen packet is self-authenticating, it is imperative that the State show by independent evidence that
the defendant is the person so previously convicted. Beck v. State, 719 S.W.2d 205, 210 (Tex. Crim.
App. 1986). Here, the State did not link the pen packet to Martin by fingerprint evidence, but
attempted to use other evidence to connect Martin to the convictions shown in the pen packet. 
According to the pen packet, Martin was convicted for unauthorized use of a motor vehicle in 1995
and for burglary in 2002. Steve Bishop testified he had served as foreman of a jury which convicted
Martin of burglary in January 2002. Randy Sinclair, a probation officer with the Red River County
Probation Office, testified he had heard that Martin had been convicted of unauthorized use of a
motor vehicle in 1995. Sinclair testified, "Yes, I understand that it happened." However, Sinclair's
statement clearly indicates he did not have any personal knowledge of the conviction at issue. 
Martin also complains that his attorney was ineffective for failing to object to that statement. 
            Ineffective assistance of counsel claims must be based on the totality of the circumstances. 
Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). We find that Martin's trial
counsel's performance was deficient based on the totality of the circumstances. The combined
prejudicial effect of allowing the jury to be informed of the fact that Martin had a criminal record
and allowing witnesses to allege that Martin was a drug user and high on PCP when arrested renders
trial counsel's performance deficient. While trial counsel could have been relying on the strategy that
an objection would make it appear that the defense was trying to hide facts from the jury, the
prejudicial effect of this inadmissible evidence so greatly outweighs such strategic concerns that no
plausible professional reason exists not to object. Further, no plausible professional reason exists
for the failure to object to the pen packet, which was not shown by competent evidence to relate to
Martin. The combined effect of the errors did render trial counsel's performance deficient. 
            Even though Martin's trial counsel's performance was deficient, Martin has not shown that
there is a reasonable probability of a different result. The second prong of the ineffective assistance
of counsel test is whether the defendant's trial was prejudiced by his trial counsel's deficiency. Texas
law requires Martin to meet both prongs of Strickland. A defendant does not meet his or her burden
by merely showing that an error had some conceivable effect on the outcome of the trial. Strickland,
466 U.S. at 693. The defendant must show that the result of the proceeding was fundamentally
unfair or unreliable. Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993). The defendant must show
a "reasonable probability" that, but for the error, the result of the trial would have been different. 
Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine
confidence in the outcome." Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under
current Texas law, the Strickland standard applies at punishment as well. See Hernandez, 988
S.W.2d at 770. Martin, though, has not shown that there is a "reasonable probability" that the jury
would have found him not guilty. Based on the overwhelming evidence of the threat, there is not
a reasonable probability the jury would have found him not guilty. In this case, the offense is
threatening another based on that person's reporting of a crime. The essence of the offense is the
threat. Unlike the usual situation, where the jury must rely on witness testimony and resolve
conflicting evidence, here the jury was able to hear a tape recording of Martin making the threat. 
Martin has not shown that, in light of the tape recording and the other evidence, there is a reasonable
probability the jury would have reached a different result.
            Even though the pen packet may not have been properly admitted, Martin has not shown a
reasonable probability of a different outcome at sentencing. Martin was not charged with any
enhancements due to his prior criminal acts. Retaliation is a third degree felony, which subjected
Martin to not more than ten years' or less than two years' imprisonment. See Tex. Pen. Code Ann.
§ 12.34 (Vernon 2003), § 36.06(c) (Vernon Supp. 2004–2005). Martin was sentenced to six years'
imprisonment. A defendant does not meet his or her burden by merely showing that an error had
some conceivable effect on the outcome of the trial. Strickland, 466 U.S. at 693. Martin has not met
his burden of showing a reasonable probability of a different outcome. We overrule Martin's second
point of error.
2) Sufficiency of the Evidence
            Martin's sufficiency of the evidence arguments focus on two alleged variances between the
indictment and the proof at trial. Martin alleges that the evidence at trial is not sufficient to support
a finding that he threatened to murder Hines or that Hines was a witness. There is sufficient
evidence that Martin threatened to murder Hines, but there is a nonmaterial variance between the
indictment and the evidence concerning Hines' status as a witness. Based on the hypothetically
correct jury charge, there is sufficient evidence to support the verdict.
            The indictment alleges that Martin "did commit the offense of Retaliation by then and there
intentionally or knowingly threaten [sic] to harm another, to-wit: Jeff Hines, by an unlawful act,
to-wit: murder [sic] Jeff Hines, in retaliation for or on account of the status of Jeff Hines as a
witness." The jury charge tracked the indictment. Martin alleges there is insufficient evidence
because Hines was not a witness and the context of the conversation indicates that Martin intended
to "stomp" Hines, rather than murder Hines.
            In our review of the legal sufficiency of the evidence, we employ the standards set forth in
Jackson v. Virginia, 443 U.S. 307, 319 (1979). This calls on the court to view the relevant evidence
in the light most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000); Turner v. State, 805 S.W.2d 423, 427 (Tex. Crim. App. 1991). 
            When reviewing a challenge to the factual sufficiency of the evidence to support the
conviction, we are required to determine whether, considering all the evidence in a neutral light, the
jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02,
2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in
which we may find the evidence to be factually insufficient. First, if the evidence supporting the
verdict, considered alone, is too weak to support the jury's finding of guilt beyond a reasonable
doubt, then we must find the evidence insufficient. Id. Second, if—when we weigh the evidence
supporting and contravening the conviction—we conclude that the contrary evidence is strong
enough that the State could not have met its burden of proof, we must find the evidence insufficient. 
Id. "Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be
factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually
insufficient, then we must reverse the judgment and remand for a new trial. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996).
            Martin contends there is insufficient evidence that he threatened to murder Hines. Martin
contends the context of the conversation indicates that he merely intended to "stomp" Hines, rather
than murder him. This argument fails because there is sufficient evidence that Martin threatened to
murder Hines. During the conversation with Cabler, Martin stated that he was going to "handle a
couple of business" and that "Jeff Hines is one of them." Later in the conversation Martin stated,
"I want to kill him, anyway," referring to Hines. Martin also told Cabler that he was "fixing to go
hunt a businessman" and requested directions to Hines' residence. Although Martin did state he was
"fixing to stomp [Hines's] [a--]," Cabler testified that a person could be killed by "stomping." A jury
may draw reasonable inferences based on the facts presented. Sterry v. State, 959 S.W.2d 249, 255
(Tex. App.—Dallas 1997, no pet.). Viewed in a light most favorable to the prosecution, a rational
juror could have found beyond a reasonable doubt that Martin threatened to kill Hines. Viewed in
a neutral light and after weighing the evidence supporting and contravening the conviction, a rational
juror could have found beyond a reasonable doubt that Martin threatened to kill Hines. Thus, there
is no variance between the indictment and the evidence at trial concerning whether Martin threatened
to murder Hines. Further, even if there was a variance, such a variance would be immaterial. See
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Curry v. State, 30 S.W.3d 394, 404
(Tex. Crim. App. 2000); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
            Martin argues there is insufficient evidence Hines was a witness as alleged in the indictment. 
Section 36.06 provides that:
A person commits an offense if he intentionally or knowingly harms or threatens to
harm another by an unlawful act:
(1) in retaliation for or on account of the service or status of another as a:
(A) public servant, witness, prospective witness, or informant; or
(B) person who has reported or who the actor knows intends to report
the occurrence of a crime; or
(2) to prevent or delay the service of another as a: 
(A) public servant, witness, prospective witness, or informant; or 
(B) person who has reported or who the actor knows intends to report
the occurrence of a crime.

Tex. Pen. Code Ann. § 36.06(a) (Vernon Supp. 2004–2005). While Hines implicated Martin in his
statement to the police, the State presented no evidence Hines had testified or had been called to
testify. The Texas Court of Criminal Appeals has defined "witness" as "one who has testified as
well as one who has been called to testify." Dooley v. State, 999 S.W.2d 796, 799 (Tex. App.—Tyler
1998, pet. ref'd); see Morrow v. State, 862 S.W.2d 612, 614 (Tex. Crim. App. 1993); Solomon v.
State, 830 S.W.2d 636, 637 (Tex. App.—Texarkana 1992, pet. ref'd). The Texas Court of Criminal
Appeals has recognized that "[w]hile there may be some overlap among the categories of persons
listed, each category is nevertheless distinct." Morrow, 862 S.W.2d at 614.
            The statute also applies to "prospective witnesses" and to a "person who has reported or who
the actor knows intends to report the occurrence of a crime." Tex. Pen. Code Ann. § 36.06(a). A
prospective witness is "a person who may testify in an official proceeding." Morrow, 862 S.W.2d
at 614; see Hudspeth v. State, 31 S.W.3d 409, 411 (Tex. App.—Amarillo 2000, pet. ref'd). The
evidence at trial established that Hines clearly reported the offense and that Hines was a prospective
witness. "A 'variance' occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial." Gollihar, 46 S.W.3d at 246. Since Hines met the requirements
of the statute as either a person who reported the crime or as a prospective witness but was not a
witness, there is a variance between the indictment and the evidence at trial.
            We must now decide whether the variance which established that Hines was a prospective
witness rather than a witness renders the evidence insufficient. The Amarillo Court of Appeals has
examined this issue and found the evidence to be sufficient. Hudspeth, 31 S.W.3d at 411. In
Hudspeth, the evidence at trial established that the person threatened was a prospective witness
within the statute, but there was no evidence she had testified or been called to testify. Id. at 410–11. 
The court reasoned as follows:
In his third issue, appellant argues Mary was not a "witness" within the
meaning of section 36.06 because she had not yet testified at an official proceeding.
Section 36.06(a) not only protects witnesses but potential witnesses and those who
have reported the occurrence of a crime. Under the evidence presented at trial, at the
time appellant made the statements at issue, Mary was both a potential witness and
a person who had reported a crime. It is irrelevant that she had not yet testified. We
overrule appellant's third issue.
Id. at 411–12. We will follow our sister court's reasoning and find that this variance does not render
the evidence insufficient.
            The evidence is legally and factually sufficient. Officer Groves testified Hines had provided
him a statement regarding the string of burglaries. During the conversation, Martin informed Cabler
that Hines had given a statement to the police. Martin inquired, "What the [f---] does Jeff have on
you?" Martin discussed that other individuals had been talking to the police and that something
needed to be done. The jury could have reasonably concluded the threat resulted from Hines' act of
giving a statement to the police. Although Martin had stated he wanted to kill Hines anyway, the
jury could have concluded the threat was at least partially motivated by the reporting of the crime. 
Viewed in a light most favorable to the prosecution, a rational juror could have found all the
elements of retaliation beyond a reasonable doubt. Viewed in a neutral light and after weighing the
evidence supporting and contravening the conviction, a rational juror could have found all the
elements of retaliation beyond a reasonable doubt.
            Martin has not shown a reasonable probability of a different outcome due to his trial
attorney's deficient performance. The evidence is sufficient to support the jury's verdict. For the
reasons stated, we affirm the judgment of the trial court. 
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          July 1, 2004
Date Decided:             August 11, 2004

Do Not Publish