Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
LLOYD O’NEAL ROBINSON,                      )                  No. 08-04-00217-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )      County Criminal Court at Law No. 8
)
THE STATE OF TEXAS,                                   )                  of Harris County, Texas
)
                                    Appellee.                          )                  (TC# 1213189)

O P I N I O N

            Lloyd O’Neal Robinson appeals his conviction of perjury. A jury found Appellant guilty and
the court assessed punishment at a fine of $500 and confinement in the Harris County Jail for one
year, probated for two years. We affirm.
FACTUAL SUMMARY
            In September 1999, Appellant leased an apartment from the Bay Meadows Apartments in
Friendswood, Texas. He informed the apartment manager, Evelyn Baity, that he was a member of
the United States Coast Guard and was moving with his family to Texas from California. He signed
a one-year lease running from September 10, 1999 to September 30, 2000. The lease reflected that
Appellant, his wife Wonda, his daughter, and another person would be living in the apartment.
            On November 17, 1999, Baity issued a “notice to vacate” based on Appellant’s failure to pay
the November rent in full. Appellant subsequently paid the arrearage. Over the next few months,
Appellant failed to timely pay his rent of $570 even though he was receiving a housing allotment
from the Coast Guard in the amount of $616 per month. When Baity or the assistant manager saw
Appellant around the complex, they reminded him about the delinquent rent. Each time, Appellant
assured them that he would take care of it. 
            On December 31, 1999, Appellant and his wife were arrested at the complex for fighting. 
On January 3, 2000, Wonda told Baity that Appellant was being transferred by the Coast Guard. 
Because Appellant would be relieved of his rental obligations if he were transferred, Baity asked
for a copy of the transfer order. She didn’t receive one and the following day, she issued a notice
to vacate based on non-payment of the January rent. The notice requested that Appellant be out of
the apartment within three days. On January 7, someone identified only as “Cynthia” left a message
on the office answering machine stating that the Coast Guard would pay the arrearage. When Baity
called the Coast Guard to confirm payment, she learned that Appellant was not being transferred and
the Coast Guard was not going to pay the rent. Two officers from the Coast Guard subsequently
interviewed Baity at length about Appellant’s fights with his wife and his failure to pay rent. 
            Appellant did not vacate the apartment and on January 10, Baity sought a forcible detainer. 
On January 20, she informed Appellant that a judge had ordered them to vacate by midnight
January 25. Appellant and the other occupants moved out by that date. On February 1, Baity issued
a “vacate report” reflecting that Appellant had been evicted for non-payment of rent and for
“constantly fighting.” The report, admitted as State’s Exhibit 3, also detailed the charges against
Appellant’s $200 deposit and showed a total arrearage of $1,984.50. The report was sent to
Appellant on February 3.
            Appellant and his wife then moved into The Lakes Apartments in Houston. Wonda, using
the name Wonda Steele, signed a one-year lease. The Lakes sent the occupants notices to vacate on
January 28, February 7, and March 6 for non-payment. The complex filed a complaint for forcible
detainer in November. At the time of trial, Appellant and Wonda owed more than $2,000 to The
Lakes. 
            In June 2001, Appellant applied for employment with the Houston Fire Department.


 In the
application, Appellant listed the addresses of the apartments where he had lived. The Department
conducted a background check and obtained a credit history. The Lakes reported that Appellant had
arrearages of $2,036.91 and the Department rejected Appellant’s application. Appellant submitted
a letter of appeal and, although his application was rejected because of the debt to The Lakes,
Appellant referenced Bay Meadows Apartments instead:
I am making an appeal in regards of a non-payment to Bay Meadows apartments, for
four insufficient checks totalling in the amount of $2036.91. The situation with Bay
Meadows was rectified when I was in the Coast Guard on June 12, 2001. I have a
copy of the vacate report from the main office stating that I don’t owe them any
money. 

Appellant included a copy of a report from Bay Meadows. This report, admitted as State’s Exhibit 4, 
was purportedly issued by Baity on February 1, 2000. It is identical to State’s Exhibit 3 in some
respects, but a side-by-side comparison reveals significant alterations. Exhibit 3 states that Appellant
had been evicted for non-payment of rent and fighting; Exhibit 4 states that Appellant had been
evicted for non-payment of rent, omits the information about fighting, and adds that there had been
a “loss in court.” While Exhibit 3 contains the actual term of the one-year lease, the altered report
reflects a four-month lease running from September 10, 1999 to January 10, 2000. Exhibit 3
itemizes an arrearage of $1,984.50. Exhibit 4 indicates that Appellant did not owe any money. 
Finally, where Exhibit 3 had a section at the bottom titled “Advise [sic] to Former Tenant on
Disposition of Security Deposit,” Exhibit 4 contained a handwritten note instead:
Mr. Robinson is was found in record. I really don’t see you still owe anything so I
don’t see the problem. I thought the problem was solved w/ Mr. Mike Moore from
US Coast Guard on 6-12-2001. Also Mrs. Baity has passed away and they don’t has
a manager at this present time sorry.


 

            The report bears the fax numbers of Bay Meadows’ property management company and a
healthcare facility where Wonda briefly worked in November-December 2001 as assistant director
of nursing.


 The Department took the altered report at face value and approved Appellant’s appeal
on July 25, 2002. 
            In September 2003, the Fire Department asked the Houston Police Department to assist with
an investigation concerning the Fire Department’s failure to discover during the screening process
that many of its recruits had criminal histories.


 During this investigation, Officer Miguel Calix of
the Police Department reviewed Appellant’s file. On October 16, Appellant met with Officer Calix
and Investigator Ponciano Cinco of the Fire Department. Appellant gave a sworn written statement
to Cinco:
On June 1, 2001, I filled out an application with the city of Houston for the position
of a firefighter. I also signed this application on June 1, 2001.
 
On September 24, 2001, I picked up an HFD applicant questionnaire from Station 70
while HFD Recruiting Division was conducting a recruiting drive and filled it out at
my residence. I returned the document on September 26, 2001, according to the
notes I made on it. I also signed this applicant questionnaire on September 26, 2001.
 
On January 30, 2002, I was informed by HFD Recruiting the reason why I failed my
background investigation. On October 22, 2001, I failed the background
investigation conducted by HFD Investigator Jensen due to theft of service by four
non-sufficient funds checks and by owing the Lake Apartments $2,036.91. On my
HFD applicant questionaire in the residence section, I stated that I lived at the Lake
Apartments #1204. I resided there from January of 2000 to June of 2000. Before
moving to this complex, I lived at the Bay Meadow Apartments #1102 from
September of 1999 to January of 2000. After finding out that I failed the background
check, I wrote an appeal letter and submitted a vacate report dated February 1, 2000
from the Bay Meadow Apartments #1102 stating that I did not owe Bay Meadows
Apartments $2036.91.

            Calix then went to Bay Meadows and spoke with Baity. They compared the original vacate
report (State’s Exhibit 3) with the one Appellant gave Cinco (State’s Exhibit 4). Only the top two
lines of Exhibit 4 were in Baity’s handwriting; the remainder had been altered. In reality, Appellant
still owed Bay Meadows Apartments $1,984.50. Calix also went to The Lakes where he learned that
Appellant owed that complex $2,036.91. 
            The police investigation also led to the discovery that Wonda had a criminal record. Wonda
had a criminal record in California, and while in Texas, she was convicted of multiple theft
convictions in 2000 and 2004. She had also been convicted in 2002 for tampering with a
governmental record and served two years in a Texas prison.
            Appellant appeared before a grand jury on January 8, 2004, and testified concerning
allegations that he had lied in his sworn statement to Investigator Cinco. He claimed that while
living at Bay Meadows, he was often out of town because of his Coast Guard assignments. During
this time period, he left post-dated checks for his wife to pay the rent. Appellant recalled that Baity
would leave notes on the door advising him that the rent had not been paid. He would tell Wonda
to take care of it. Appellant was unaware that he owed any money to Bay Meadows. He believed
that his wife had intercepted the vacate notice when he was out of town. When his executive officer
in the Coast Guard inquired about money owed to Bay Meadows, Wonda told Appellant that they
had won the eviction case in court. At the time, Appellant believed her. Wonda gave Appellant and
his executive officer a document purportedly showing that Bay Meadows had lost the eviction case. 
According to Appellant, this was a different document than State’s Exhibit 4. 
            By the time Appellant applied for the job with the Fire Department, he and Wonda had
separated. Nevertheless, when his application was rejected, he asked her for the documentation
showing he did not owe any money to the apartment complex. Wonda gave him State’s Exhibit 4. 
“I asked her to get me something stating that, you know, that the situation was, uh, you know,
resolved. And so, she gave me the vacate report and it was a copy and I went along with it. I didn’t
know.” He admitted that the handwriting on the altered portions of Exhibit 4 looked like Wonda’s
writing but he did not notice the similarity at the time.  
            Appellant also testified at trial. While he was in the Coast Guard, his executive officer
investigated whether Appellant had bounced checks to Bay Meadows and The Lakes. Wonda gave
the officer paperwork purportedly showing that they had won the eviction case in court and did not
owe any money to Bay Meadows. The officer told Appellant that the matter had been resolved in
his favor. When the Fire Department rejected his application because he owed money to The Lakes,
Appellant called Wonda at work and asked her for documentation showing that the past-due rent to
Bay Meadows had been resolved.


 Wonda faxed him Exhibit 4. Although the fax is dated
November 29, 2001 and bears the fax number of Wonda’s former employer, Northway Healthcare,
Appellant claimed that Wonda did not send it to him until February 2002. Appellant completed the
appeal letter, attached Exhibit 4, and submitted it to the Fire Department. Appellant believed that
Exhibit 4 was legitimate. When Appellant met with Calix and Cinco in October 2003, he
represented to them that Exhibit 4 was a legitimate report and denied having any intent to deceive
them. 
            On cross-examination, Appellant admitted that Wonda had financial problems while they
lived in California and that he could not trust her with financial matters because she wrote bad
checks and took money out of his account without his knowledge. He denied knowing that she had
been on felony probation in California for receiving stolen property and for forgery. While he knew
that Wonda had written bad checks in Houston, he denied knowing that she had served jail time in
September 2000 for theft. 
            Appellant acknowledged that when he leased the apartment from Bay Meadows, Baity
explained all of the terms to him, including the penalty clause for early termination. Despite
believing Wonda could not be trusted with financial matters, Appellant left post-dated checks for
her to pay the rent. Appellant denied knowing that Wonda had not paid the rent, yet he testified that
on one or two occasions, Baity and the assistant manager told him that the rent was delinquent. At
trial, he denied ever seeing any of the notices from Baity that the rent had not been paid, but he had
testified before the grand jury that he had seen one of the notes. When impeached with his prior
testimony, Appellant admitted that his grand jury testimony was correct. 
            Appellant returned to Houston from a six-week Coast Guard assignment sometime in January
2000, and learned that Wonda had moved the family from Bay Meadows to The Lakes. He did not
know they had been evicted from Bay Meadows. Appellant’s claim that he was at sea for a six-week
period between December 1999 and January 2000 is contradicted by evidence that Appellant and
Wonda were arrested on December 31, 1999 for fighting at their apartment. And despite his
knowledge that he had signed a one-year lease with a penalty for early termination, Appellant never
inquired whether he owed Bay Meadows any money. The jury rejected Appellant’s defense and
convicted him of perjury.
“OTHER ACTS” EVIDENCE
            In Issue One, Appellant contends that the trial court abused its discretion by admitting
evidence of Wonda’s bad acts and crimes in violation of Rules of Evidence 403 and 404(b). The rule
limiting evidence of other crimes, wrongs, or acts applies not only to the accused, but also to third
persons. Castaldo v. State, 78 S.W.3d 345, 348-50 (Tex.Crim.App. 2002). Evidence of other
crimes, wrongs or acts is not admissible as character evidence, but it may be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident. Tex.R.Evid. 404(b). In addition to the purposes listed in Rule
404(b), extraneous offense evidence may be admissible in order to prove the context in which an
offense was committed. Castaldo, 78 S.W.3d at 350. We review the trial court’s decision to admit
this type of evidence for an abuse of discretion. Montgomery v. State, 810 S.W.2d 372, 391
(Tex.Crim.App. 1990)(op. on reh’g).
Relevance
            The indictment alleged that Appellant, with knowledge of the statement’s meaning and with
intent to deceive, made the following false statement:
 

I wrote an appeal letter and submitted a vacate report dated February 1, 2000 from
the Bay Meadow Apartments #1102 stating that I did not owe Bay Meadows
Apartments $2036.91.
 
Appellant relied on the vacate report he obtained from his wife and submitted it as proof that he did
not owe money to Bay Meadows. He subsequently reaffirmed these facts in his sworn statement. 
The evidence tended to establish that Wonda altered the report. In order to prove that Appellant
could not have reasonably believed the document was genuine, the State offered evidence of
Wonda’s financial dishonesty, her bad acts and her criminal history which included theft and forgery. 
The evidence has relevance beyond character conformity as it is relevant to prove Appellant’s
knowledge and his intent to deceive.
Rule 403
            Relevant evidence may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of
undue delay, or needless presentation of cumulative evidence. Tex.R.Evid. 403. In conducting a
balancing test, the trial court must weigh the testimony to see if its probative value was substantially
outweighed by the potential for unfair prejudice. See Santellan v. State, 939 S.W.2d 155, 169
(Tex.Crim.App. 1997). Factors to be considered include (1) the evidence’s inherent probative value,
(2) its potential to impress the jury in some irrational but indelible way, (3) the amount of trial time
the proponent needs to develop such evidence, and (4) the proponent’s need for the evidence.
Montgomery, 810 S.W.2d at 389-90.
            The first factor looks to how compelling the evidence serves to make a fact of consequence
more or less probable. State v. Mechler, 153 S.W.3d 435, 440 (Tex.Crim.App. 2005). We presume
that relevant evidence is more probative than prejudicial. Santellan, 939 S.W.2d at 169. When
considered with evidence tending to prove that Appellant knew he had violated the one-year lease
and owed money to Bay Meadows, Appellant’s knowledge of his wife’s financial dishonesty and
criminal record is highly probative of his knowledge regarding the statement and his intent to
deceive.
            The second factor asks whether the evidence has a potential to impress the jury in some
irrational but indelible way. Mechler, 153 S.W.3d at 441. Rule 403 does not exclude all prejudicial
evidence; rather, it focuses only on the danger of “unfair” prejudice. Id. Unfair prejudice pertains
only to the tendency of relevant evidence to tempt the jury into finding guilt on grounds apart from
proof of the offense charged. Id. In passing on this factor, we keep in mind that the trial court
instructed the jury that the evidence regarding Wonda’s criminal history could not be considered as
evidence of Appellant’s character but could only be considered as evidence of his knowledge. Other
than generally arguing that the jury would consider this as character conformity evidence, Appellant
does not explain how the evidence would impress the jury in some irrational but indelible way. 
Given the probative value of the evidence and the trial court’s limiting instructions, we find no
indication that the evidence created a danger of unfair prejudice. 
            The third factor concerns the time the proponent will need to develop the evidence, during
which the jury will be distracted from consideration of the indicted offense. Mechler, 153 S.W.3d
at 441. The evidence regarding Wonda’s criminal history did not require an excessive amount of
time to develop and there is no indication that the jury was distracted from consideration of the
indicted offense.
            Finally, in determining need, the trial court examines the availability of other evidence to
establish the particular fact of consequence, the strength of that other evidence, and whether the fact
of consequence is related to an issue in dispute. Montgomery, 810 S.W.2d at 389-90. The State
needed the evidence to establish Appellant’s knowledge and intent to deceive. After evaluating all
these factors, we conclude they weigh in favor of admissibility. Finding no abuse of discretion, we
overrule Issue One. 
PROSECUTOR’S COMMENT
            In Issue Two, Appellant complains that the trial court abused its discretion by denying his
motion for mistrial when the prosecutor referred to him as a “deadbeat” because it constituted
improper character evidence. During re-direct examination of a Fire Department employee, the
prosecutor asked the following question:
But, unfortunately, [the Houston Fire Department] didn’t check out to see if the
reason why he was moving from apartment complex to apartment complex was
because he was a deadbeat or because he was being --

In sustaining Appellant’s Rule 404(b) objection to the “deadbeat” characterization, the trial court
noted that the prosecutor could make reasonable inferences from the evidence during final argument
but asked that counsel introduce evidence without making characterizations. The court instructed
the jury to disregard the last question, but denied the motion for a mistrial.
            A mistrial is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile. Ladd v. State, 3 S.W.3d 547,
567 (Tex.Crim.App. 1999). A trial court may properly exercise its discretion to declare a mistrial
if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would
have to be reversed on appeal due to an obvious procedural error. Id. Whether a given error
necessitates a mistrial must be made by examining the particular facts of the case. Id. An improper
question will seldom call for a mistrial because, in most cases, any harm can be cured by an
instruction to disregard. Id. A mistrial is required only when the improper question is clearly
prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing
the impression produced on the minds of the jurors. Id. A trial court’s denial of a mistrial is
reviewed under an abuse of discretion standard. Id.
            The prosecutor’s characterization of Appellant as a “deadbeat” could be a reasonable
deduction from the evidence and may have been permissible during final argument. See e.g.,
Gaffney v. State, 937 S.W.2d 540, 543-44 (Tex.App.--Texarkana 1996, pet. ref’d)(prosecutor’s
reference to defendant as “Mr. Liar” during final argument held permissible); Belton v. State, 900
S.W.2d 886, 898 (Tex.App.--El Paso 1995, pet. ref’d)(prosecutor’s reference to defendant as
“animal” during final argument held permissible). The trial court, in the exercise of its discretion,
admonished both attorneys about making these types of comments during the evidentiary phase of
the trial and sustained Appellant’s objection. Because this is not an extreme case and there is
nothing to indicate that the comment was calculated to inflame the minds of the jury, we must
presume that the jury obeyed the trial court’s instruction to disregard the prosecutor’s comment. See
Ladd, 3 S.W.3d at 567. The court did not abuse its discretion by denying the motion for mistrial. 
Issue Two is overruled.
SUFFICIENCY OF THE EVIDENCE
            In Issues Three and Four, Appellant challenges the legal and factual sufficiency of the
evidence to support the intent to deceive element.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict.
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S.W.2d at 158.
            In reviewing factual sufficiency of the evidence to support a conviction, we are to view all
the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In Zuniga v.
State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004), the Court of Criminal Appeals clarified the
factual sufficiency standard and linked the appellate standard of review to the beyond a reasonable
doubt burden of proof. There is only one question to be answered in a factual sufficiency review:
Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt
beyond a reasonable doubt? Zuniga, 144 S.W.3d at 484. However, there are two ways in which the
evidence may be insufficient. Id. First, when considered by itself, evidence supporting the verdict
may be too weak to support the finding of guilt beyond a reasonable doubt. Id. Second, there may
be both evidence supporting the verdict and evidence contrary to the verdict. Id. Weighing all the
evidence under this balancing scale, the contrary evidence may be strong enough that the
beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. 
Id. at 485. This standard acknowledges that evidence of guilt can “preponderate” in favor of
conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Id.
Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be factually
insufficient under a beyond-a-reasonable-doubt standard. Id. In performing this review, we are to
give due deference to the jury verdict, as well as to determinations involving the credibility and
demeanor of witnesses. Zuniga, 144 S.W.3d at 481.
Intent to Deceive
            A person commits perjury if, with intent to deceive and with knowledge of the statement’s
meaning, he makes a false statement under oath. Tex. Penal Code Ann. § 37.02 (Vernon 2003). 
In a prosecution for perjury, intent to deceive may be inferred from the circumstances. Mitchell v.
State, 608 S.W.2d 226, 229 (Tex.Crim.App. 1980). 
Legal Sufficiency
            Taken in the light most favorable to the verdict, the evidence established that Appellant knew
he had signed a one-year lease at Bay Meadows and that the lease contained a penalty clause. 
Appellant also knew that he had been delinquent in paying the rent and that the apartment manager
had issued a notice to vacate for non-payment of rent. Appellant moved out of the apartment
complex only five months into the one-year lease without paying the past-due rent or even inquiring
whether he owed any money for early termination. When the Fire Department rejected his
employment application because he owed money to The Lakes, Appellant did not go to management
and attempt to straighten out the matter. Instead he asked his wife, whom he knew had been
dishonest with him in financial matters and had written hot checks, to provide him with a document
showing that he did not owe any money to Bay Meadows. Wonda gave Appellant the forged vacate
report which Appellant read before presenting to the Fire Department. That report falsely reflected
Appellant had entered into a six-month lease and did not owe any money to Bay Meadows due to
a “loss in court.” Appellant claimed that he did not notice the similarity between Wonda’s
handwriting and the handwriting on the forged vacate report. By the time Appellant made his sworn
written statement in October of 2003, he knew that the Fire Department and the Police Department
were investigating whether he had satisfied his financial obligations to the apartment complexes. 
He also knew of Wonda’s 2002 conviction of tampering with a governmental record conviction
related to her forgery of a nursing license. And he knew that he still owed money to Bay Meadows. 
Despite this knowledge, he again relied on the fraudulent vacate report as evidence that he did not
owe any money to Bay Meadows. Based on the foregoing evidence, a jury could reasonably
conclude that Appellant made the statement with intent to deceive. Issue Three is overruled.
Factual Sufficiency
            Appellant argues that the circumstantial evidence is too weak to prove that he made his sworn
statement in October of 2003 with an intent to deceive. In his brief, Appellant focuses on evidence
showing Appellant’s knowledge as it existed before he made the sworn statement. The appropriate 
inquiry is Appellant’s knowledge and intent at the time he made the statement. The evidence, when
considered in a neutral light, establishes that Appellant knew officials were investigating whether
he had paid the money owed to various apartment complexes. Appellant blamed his wife for creating
all of his financial problems without his knowledge, but he knew he had signed a one-year lease with
an early termination penalty, he knew he had broken the lease, and he knew that he owed money. 
He knew that his wife had been convicted of tampering with a governmental record. Appellant
maintained that the vacate report from Bay Meadows was genuine and submitted it as evidence that
he did not owe any money. It was the jury’s duty to weigh the credibility of the various witnesses,
including Appellant, and to resolve the conflicts in the evidence. The jury’s determination that
Appellant made his sworn statement with an intent to deceive is supported by factually sufficient
evidence. Issue Four is overruled. Having overruled each issue presented on appeal, we affirm the
judgment of the trial court.

March 23, 2006                                                           
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)