Michael T. CASTALDO, Appellant,

v.

The STATE of Texas.

No. 0189–01.

Court of Criminal Appeals of Texas.

June 26, 2002.

---

Mark D. Griffith, Waxahachie, for appellant.

Betty Marshall, Assist. St. Atty., Matthew Paul, State's Attorney, Austin, for state.

### OPINION

The opinion was delivered PER CURIAM.

In this case we address whether Rule 404(b) prohibits the admission of extraneous bad acts committed by a third party and whether same transaction contextual evidence ever requires a limiting instruction. We will reverse the judgment of the Court of Appeals.

### 1. Background

Sheriff's Deputy Scott Dyson was alerted to watch for a possible intoxicated driver headed south on Interstate Highway 45. Before the vehicle reached his location, a dispatcher informed Dyson that the automobile had turned around and was headed north in the southbound lane of I–45. Dyson activated his emergency lights and siren and drove northward on the service road to search for the vehicle. After locating the vehicle, a Jeep Cherokee, Dyson illuminated it with a spotlight and used the public address system equipment in his patrol car to order the vehicle to pull over. The Jeep continued for two and a half miles before it stopped, when the driver pulled onto the median of the highway. He tried to drive onto the other side of the highway (to go in the opposite, but equally wrong, direction), but the deputy pulled him out of the vehicle. The driver was intoxicated.

There were two men in the vehicle: the driver and the appellant, who was a passenger. At that time, Dyson smelled the odor of burnt marihuana and alcoholic beverages. Shortly, another officer arrived and ordered the appellant out of the passenger seat, whereupon the officer noticed a small, wooden box on the passenger-side floorboard. The officer testified it was a "stash box," commonly used to hold marihuana. It contained about a gram of marihuana. In the console between the driver's and passenger's seats was a Tupperware container in which were more marihuana, rolling papers, and a small scale.

Deputy Dyson testified that appellant's eyes were "glassy, bloodshot," and that he was "unfocused, didn't realize where he was" when he was first confronted. Dyson also testified that, although appellant's breath did not smell like marihuana, it did smell like alcohol. In Dyson's opinion appellant was intoxicated by a combination of alcohol and marihuana. The driver was arrested for driving while intoxicated and possession of marihuana, and appellant was arrested for possession of marihuana.

The driver testified that the appellant was not in possession of the marihuana and had no knowledge of its being in the car. He said the appellant was sleeping. His testimony was limited by his frequent invocation of the Fifth Amendment right against compulsory self-incrimination, which the trial court sustained. (There was no cross-appeal of the ruling.)

The appellant testified that he had met the driver, with whom he was acquainted but not as a good friend, in a restaurant and jazz club about 75 miles from the scene of the arrest. When the two men left the club, the driver agreed to give the appellant a ride home. The appellant went to sleep in the passenger seat the instant he got in the vehicle, and he did not awaken before the officer rousted him from the car. He didn't know where he was. The wooden box was not his. He knew nothing about it or the contents of the center console. He did not use marihuana because he did not want to jeopardize his employment in a job "that carries a significant amount of responsibility and authority," a condition of which was submission to random drug tests. He had been drinking, but he didn't know if he was intoxicated. Asked how the driver could know that he (the appellant) was unaware of the marihuana, the appellant answered: "Unless there's a presumption that it was his. In which case you've already heard him invoke his Fifth Amendment right to self incrimination [*sic*] here before the Court and the Judge today and the jurors." He gave other, similar answers as well.

In final arguments the appellant's argument was that there was much evidence about the driver, but the evidence about the appellant was from the driver who testified that the appellant knew nothing of the marihuana, and took the Fifth. The State's argument was that the appellant's story was incredible and the driver was covering up for him by saying, "[The appellant] didn't know about the marihuana. It wasn't his marihuana. And by the way I take the Fifth and I'm out of here."

At trial, appellant objected under Rule 404(b) to the introduction of evidence of the driver's conduct. Appellant also objected to evidence of his own alcohol intoxication. For both types of evidence, he requested a limiting instruction. His objections were overruled and his requests for limiting instructions were denied.[1]

---

1. The trial court initially sustained appellant's objection concerning his own alcohol intoxi- cation but later reversed its ruling. At the time that evidence was offered the trial court

The Court of Appeals reversed the conviction on two independent grounds. First, the court held that the driver's conduct constituted an inadmissible extraneous offense under Texas Rule of Evidence 404(b).[2] In so holding, the court determined that Rule 404(b) applies to the conduct of third parties and that the driver's conduct was not admissible as same transaction contextual evidence.[3] Second, the Court of Appeals held that, while appellant's alcohol intoxication was admissible as same transaction contextual evidence, the trial court erred in refusing to give a limiting instruction.[4]

## 2. Driver's Conduct

### The Law

■■■ The State contends that Rule of Evidence 404(b) does not apply to the acts of a third person. Its first argument is based on the language of the rule, so it is well to set out the rule:

Rule of Evidence 404 says:

**(a) Character Evidence Generally.** Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of accused.* Evidence of a pertinent character trait offered:

(A) by an accused in a criminal case, or by the prosecution to rebut the same, or

(B) by a party accused in a civil case of conduct involving moral turpitude, or by the accusing party to rebut the same;

(2) *Character of victim.* In a criminal case and subject to Rule 412, evidence of a pertinent character trait of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of peaceable character of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor; or in a civil case, evidence of character for violence of the alleged victim of assaultive conduct offered on the issue of self-defense by a party accused of the assaultive conduct, or evidence of peaceable character to rebut the same;

(3) *Character of witness.* Evidence of the character of a witness, as provided in rules 607, 608 and 609.

**(b) Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

The State argues, "Because the plain language of the rule refers only to the singular 'a person' and to 'the accused,' Rule 404(b) of the Texas Rules of Evidence does not apply to the acts of a third

gave a limiting instruction, but upon the State's urging, the trial court refused to give a limiting instruction in the jury charge.

**2.** *Castaldo v.State,* 32 S.W.3d 413, 420–424 (Tex.App.-Waco 2000).

**3.** *Id.*

**4.** *Id.* at 425–427.

party."[5] We think the language points to the opposite conclusion.

[O]n its face Rule 404(b) is not restricted to the acts by the defendant. The rule uses the expressions, "a person." When Congress intended to limit a particular Rule to the defendant, Congress did that expressly. By way of illustration, Rule 404(a)(1) focuses on the character of "an accused." Rule 609(a)(1) also employs the expression, "an accused." The contrast between the wording of Rule 404(b) and that of 404(a)(1) and 609(a)(1) is evident. We would normally assume that Congress' choice of broader language was deliberate. In short, Rule 404(b) does not mandate that only the defendant's acts be admitted under the uncharged misconduct doctrine.[6]

Congress, of course, enacted the Federal Rules of Evidence. The Texas Rules of Evidence are patterned after them.[7] In particular, Texas Rule 404 uses the words "person" and "accused" in the same way that Federal Rules 404 and 609(a)(1) do.

The State also relies on "the fact that one person's acts do not show another person's character."[8] Again we disagree. "There are several situations in which a third party's act could be as probative as an act personally performed by the defendant."[9]

The State also points out language in some of our decisions in which we have referred to the State's burden to show that the defendant committed the extraneous act.[10] The defendant's acts were at issue in those cases, as they are in the usual case, and proof of identity was important. "However, in other cases, anonymous acts or third party's acts can be logically relevant. Hence, there is no need to confine the scope of the uncharged misconduct doctrine to the defendant's personal acts."[11]

It is important to distinguish the role of Rule 404 in excluding evidence from its role in admitting evidence. Rule 404(a) is a general rule that excludes evidence of character for the purpose of proving that, in the case on trial, a person acted characteristically, although there are three exceptions. The first sentence of Rule 404(b) expresses a prohibition against using evidence of acts to prove character, even when character is at issue under one of the three exceptions in 404(a). "The reason is the familiar one of prejudice outweighing probative value. Character evidence used for this purpose, while typically being of slight value, usually is laden with the dangerous baggage of prejudice, distraction, time consumption and surprise."[12]

■ The second sentence of Rule 404(b) shows a recognition that evidence of extraneous acts may be admissible for purposes other than proving character. Rule 404(b)'s examples of specific, bad conduct

5. Brief at 3.

6. EDWARD J. IMWINKELREID, UNCHARGED MISCONDUCT EVIDENCE § 2:05 (2001) (footnotes, collecting cases, omitted).

7. *Cole v. State,* 839 S.W.2d 798, 801 (Tex.Cr. App.1990).

8. Brief at 3.

9. EDWARD J. IMWINKELREID, *supra* note 6, *ibid* (giving examples of the act of an accomplice or coconspirator, the act of a third party that

is relevant to the defendant's guilty knowledge, misconduct that is relevant to an element of an offense, and others).

10. Brief at 3 (citing *Harris v. State,* 790 S.W.2d 568, 583 (Tex.Cr.App.1989)).

11. EDWARD J. IMWINKELREID, *supra* note 6, *ibid.*

12. EDWARD W. CLEARY, MCCORMICK ON EVIDENCE § 188 (3d ed.1984).

do not exhaust the possibilities of proper purposes for such evidence. It may be proper to admit evidence of a person's bad conduct in order to prove the context in which an offense was committed.[13]

When evidence of misconduct is offered for such purposes, there is a danger that the jury will misuse the evidence to infer character.

> In this situation the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the prejudicial value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403.[14]

The admissibility of evidence offered under the second sentence of Rule 404(b) will almost always involve a balancing under Rule 403. The weight of the prejudice to the defendant may be different if the extraneous acts are a third party's rather than his own, keeping in mind that the prejudice is greater if the third party's acts in some way prove the defendant's character.

The danger of prejudice to the defendant is usually highest when evidence of the defendant's extraneous acts is offered to prove that the defendant acted the same way in the offense on trial. The danger of prejudice may be much lower when evidence of a third party's extraneous acts is offered. If the third party's acts are in some way probative of the defendant's character as well as the third party's, the

danger of prejudice may be somewhere in between.

In this case the extraneous misconduct was committed by the driver of the vehicle in which the defendant was riding (and in which the marihuana was found). The driver was reckless in driving and showed signs of intoxication. This conduct certainly could be used to infer his bad character. Under the Rule 403 balancing test that is an inherent part of Rule 404(b), did the trial court clearly err in concluding that "its probative value [was not] substantially outweighed by the danger of unfair prejudice" to the defendant? [15]

### Application of Law to Facts

■ The court of appeals, dividing on the question, held that the evidence of the driver's conduct before he stopped went to prove the appellant's character, and that it had no proper value.

> We believe that the character-conformity tendency of this evidence is apparent. The evidence demonstrates that Castaldo is the type of person who would ride in a vehicle with a driver who is dangerously intoxicated. Such a person, in logic and common experience, would be more likely to be the type of person who would engage in drug use.[16]

> . . .

> The evidence of the driver's acts [before he stopped the vehicle] could have been admitted only for the purpose of showing that Castaldo's character was such that it was reasonable to believe that he committed the crime with which

---

**13.** *See, e.g., Mann v. State,* 718 S.W.2d 741, 744 (Tex.Cr.App.1986).

**14.** ADVISORY COMMITTEE'S NOTE, FEDERAL RULE OF EVIDENCE 404.

**15.** *See* Tex.R. EVID. 403 ("Although relevant, evidence may be excluded if its probative val-

ue is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence").

**16.** Op. at 422.

he was charged. That evidence had no other possibly-relevant use at Castaldo's trial. As we have shown, those acts could not have been admitted as ... "same transaction contextual evidence." Thus, because the driver's bad acts were offered to show Castaldo's propensity to act in conformity with the acts of that third party, Rule 404(b) applies to bar admission of the evidence.[17]

The court of appeals, however, rejected the appellant's argument that evidence of his intoxication (including his drinking) was inadmissible evidence of extraneous misconduct.

In the context where a defendant is charged with possessing drugs over which he does not have exclusive control, the fact that a defendant is under the influence of a drug has been recognized as a factor which the courts consider when determining if the State has proved sufficient "affirmative links" between the defendant and the drugs which he is charged with possessing. Thus showing intoxication by drug usage is a relevant "evidentiary fact" which inferentially leads to the elemental facts of "knowledge." [18]

It is difficult to reconcile the former holding with either the latter holding or the facts of the case. The evidence of the manner of driving was relevant to the contested issue in the case, knowledge.

The driver and the appellant were in a vehicle that smelled of marihuana and which contained marihuana. The State's theory was that the two men were drinking and smoking together. The defense was that the appellant had no knowledge of the marihuana because he was asleep the entire time he was in the vehicle, and (by broad implications) the marihuana was the driver's and the smoke came from his smoking. The defense of lack of knowledge turned on the appellant's testimony that he went to sleep the moment he got in the vehicle and remained asleep until the officer rousted him from it. He testified that neither the reckless driving nor the siren, lights (including bright, white lights that shone into the vehicle) and loudspeaker woke him up. These facts were relevant, first, to the credibility of his story that he was continuously and soundly asleep during the time the marihuana was used. Second, they were relevant to the issue of the reason why a person could sleep so soundly if he had not been smoking marihuana.

If, as the court of appeals held, intoxication was also relevant to show the appellant's knowledge and possession of the marihuana, then it was relevant to show the driver's knowledge and possession. His driving was strong evidence of his intoxication, and therefore it was relevant to the defense.

As to prejudice, we agree with the court of appeals that evidence of voluntarily riding with a drunk driver might show that a passenger was at least reckless to intoxication. But the court of appeals overlooked the defensive theory, which was that the marihuana smoker was the driver. The more the evidence showed the driver was a bad person, an intoxicated driver, and a drug user, the more it helped the defense.

We think it impossible to say that the slight prejudice that might accrue from evidence of voluntary riding with an intoxicated driver could greatly outweigh the proper relevance of the evidence of bad driving to the issues of knowledge and use of the marihuana.

17. Op. at 425.

18. Op. at 425 (citations omitted).

### 3. Appellant's Alcohol Intoxication— Limiting Instruction

■ In *Camacho*, we held that same transaction contextual evidence is admissible without a limiting instruction.[19] We more recently reaffirmed this holding in *Wesbrook*.[20] As the Court of Appeals conceded that appellant's alcohol intoxication was in fact same transaction contextual evidence, it follows that no limiting instruction was required. The Court of Appeals's holding that a limiting instruction is required is contrary to *Camacho* and *Wesbrook*.

The judgment of the Court of Appeals is reversed and the case is remanded to that court for consideration of appellant's remaining points of error.

MEYERS, J., filed a concurring opinion.

JOHNSON, J., concurred in the result.

MEYERS, J., filed a concurring opinion.

I join the majority opinion. *Castaldo v. State*, No. 0189–01 (Tex.Crim.App. June 26, 2002). I simply note that in most cases, battles over evidence of the acts of a third party will be lost or won on the field of Rule 402, and not Rule 404. In other words, the acts of a third party will generally not be relevant to a fact of consequence in the trial of the accused, and they will be inadmissible on those grounds. In this case, the appellant originally objected that "We do not feel that [the driver's conduct] would be relevant" but directed the remainder of his arguments at excluding the evidence under Rule 404(b). Likewise, the Court of Appeals focused on Rule 404(b), though the court did note that "Absent ... a 'logical connection,' [to the defendant's character], evidence of the acts of another would be totally irrelevant and thus inadmissible." *Castaldo v. State*, 32 S.W.3d 413, 420 (Tex.App.–Waco 2000). Although the majority does address the relevance of the driver's conduct within its discussion of the balancing analysis performed under Rule 403, I simply add that in general, the relevance of a third party's acts will be determinative, and 404(b) may not even enter the discussion.

---

**19.** *Camacho v. State*, 864 S.W.2d 524, 532 (Tex.Crim.App.1993).

**20.** *Wesbrook v. State*, 29 S.W.3d 103, 114–115 (Tex.Crim.App.2000).