Affirmed and Memorandum Opinion filed April 18, 2006









Affirmed and Memorandum Opinion filed April 18, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00133-CR

_______________

 

JONATHAN DAVID CHARTIAN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from 208th District Court

Harris County, Texas

Trial Court Cause No. 957,543

                                                                                                                                               


 

M
E M O R A N D U M   O P I N I O N

A jury convicted appellant Jonathan David
Chartian of the offense of robbery and sentenced him to twenty-five years
incarceration in the Texas Department of Criminal JusticeCInstitutional
Division.  In two issues, appellant
contends the trial court erred when it (1) admitted statements made by a police
officer in a videotaped interview with appellant; and (2) overruled appellant=s objection to
statements made by the prosecutor in the State=s closing
argument.  We affirm.

 








I.  Factual and Procedural History

In May 2003, seventy-one-year-old
Graciella Campos lived in northeast Houston with her daughter and three young
grandchildren.  Campos ran a business out
of her home in which she sold soda, hamburgers, hot dogs, and candy to
residents of the neighborhood. 
Appellant, who was known in the neighborhood as AJohn Boy,@ was a frequent
customer.  On May 30, 2003, appellant and
two young males entered Campos=s home and ordered
some food.  Campos asked them to return
later.  Appellant then asked to use
Campos=s bathroom and
Campos gave him permission to do so.  At
that time, one of the males began ransacking Campos=s home in search
of money.  The other male grabbed Campos,
forced a towel into her mouth, and wrestled her to the ground.  Before appellant and the two males left her
home, Campos gave them a bag containing $2,500.00.

Campos immediately told a neighbor about the events and the neighbor called
police.  Officer Jaime Escalante of the
Houston Police Department (AHPD@) responded to the call and met with Campos.  She told Escalante that she had recognized
one of her assailants but did not remember his name.  Campos also stated that both a gun and a
knife had been used in the attack. 
Because Campos was upset to the point that Escalante Acouldn=t really interview her,@ Escalante prepared a report without
presenting charges to the district attorney.

Approximately two weeks later, Officer Steve Guerra was
assigned to investigate the robbery. 
Guerra met with Campos at her home on June 19, 2003 and at that time,
Campos named AJohn Boy@ as one of her attackers.  Two days later, Guerra met with Campos again
and she provided him with pictures of appellant and other males that had been
given to her by a neighbor.  Guerra
prepared a photospread that included appellant=s picture, and  Campos identified appellant in the
photospread as AJohn Boy.@ 








On August 16, 2003, appellant went to HPD headquarters to
meet with Guerra.  In a videotaped
interview, appellant waived his rights and agreed to answer Guerra=s questions about the robbery.  Following the interview, appellant was
arrested and charged with aggravated robbery.

At trial, the State offered an excerpt of the videotaped
interview into evidence over appellant=s objection that some of Guerra=s statements were evidence of the
extraneous offense of retaliation.  The
excerpt showed Guerra reading appellant his rights and also showed appellant
describing events that took place before, during, and after the robbery.

 During closing
arguments, the State suggested that Campos was courageous to testify against
appellant despite her knowledge of the potential for retaliation.  Appellant objected to the prosecutor=s statements on the grounds that
there was no evidence of retaliation. 
The trial court overruled the objection. 


The jury found appellant guilty of the lesser-included
offense of robbery.  After appellant
pleaded Atrue@ to a prior conviction for burglary
of a habitation, the jury sentenced him to twenty-five years incarceration. 

II. 
Issues Presented

In his first issue, appellant contends the trial court erred
by admitting, over appellant=s objection,  a portion
of Guerra=s videotaped statements because there
is no evidence of an intent to commit an extraneous offense.   In his second issue, appellant argues the
trial court erred by overruling his objection to the State=s comments about Campos=s fear of retaliation during its
closing argument. 

III. 
Discussion

A.        Do Guerra=s Statements Constitute Evidence of
an Extraneous Offense?








In his videotaped interview with Guerra, appellant claimed
the robbery was influencedCbut not committedC by three individuals, two of whom he
identified as ARock@ and AToby.@ 
At the beginning of the interview, appellant identified ARock@ in a picture that Campos had
previously provided Guerra.  Appellant
claimed the picture was provided to the police by a woman named ADebra Jean.@ 
According to appellant, Rock, Toby, and a third individual approached
him after the robbery and demanded a share of the money obtained.  Appellant also stated that the three men
attempted to prevent the neighborhood=s residents from informing the police
of their role in the robbery.  Near the
end of the interview, when asked by Guerra why he had not identified the other
involved parties, Appellant responded: 

Rock tells me to f--k this lady off, man.  Straight up, serious.  Debra Jean, the one that took the
pictures.  You know what I=m saying?  And
you don=t think that scared me, man?  Because if they do anything to this womanCor think about doing something to this womanCthey won=t do it
to me? 

Guerra responded by informing appellant that the pictures
were obtained by a search warrant, against ADebra Jean=s@ wishes:

GUERRA: These pictures?  I had to get a subpoena from her and a search
warrant, because . . . 

APPELLANT: Because they were trying to take the
pictures.

GUERRA: Yeah, she took pictures.

APPELLANT: Toby was trying to take the pictures from
her.

GUERRA: Yeah, she took those pictures.  She didn=t want
to give them to me.

APPELLANT: Yeah, they were threatening her, man.

GUERRA: No no no no. 
I=m telling you. 
She didn=t want to give me the pictures. 

APPELLANT: When y=all was
[sic] called out there that time, after she took the pictures, that Friday, she
took pictures of usC

GUERRA: She didn=t call
the police.

APPELLANT: The police came out thereC








GUERRA: You know why? 
Because the complainantCthe victimsCthey saw
you.  That=s why the
police went out there.  I=ve already been looking for you.  I=ve been
looking for you.  The police weren=t called there because a lady took any pictures.  I don=t know
when she took these pictures.  And the
reason I found out about these pictures is because, somebody there overheard
that lady, the neighbor talking about some pictures or something, and you know,
something about your name came up.  So I
had enough information to get a search warrant, and I demanded these pictures
from her.  If she wouldn=t have gave meCshe didn=t want to give them to me.  If she hadn=t given
them to me, I=d have had to put her in jail.  You know what I=m
saying?  So, do you understand what I=m saying?

APPELLANT: Yes, sir.

GUERRA: She didn=t call
the police.  And she didn=t give me these pictures.  I had to get a warrant, and I had to get them
from her.  You understand what I=m saying?  So if
anybody should be mad at anybody, they [sic] should be mad at me.  Because I=m doing
my job.

APPELLANT: Yeah, that=s what I
told them.  I said, y=all don=t trust
this woman, man, you know what I=m
saying?

GUERRA: That woman had nothing to do with nothing.

APPELLANT: I couldn=t find
out what was going on, becauseC

GUERRA: She wouldn=t tell
me nothing.  She wouldn=t tell meCI asked
her, >Who are these people?@ and she
wouldn=t even tell me. 
She wouldn=t tell me nothing. 
She=s probably friends with y=all or something, I don=t know.

APPELLANT: SheCI never
had no problem with her, you know what I=m
saying?

GUERRA: She wouldn=t tell
me nothing.  

(emphasis added).  The
video concluded shortly thereafter.

As noted, before the videotape was
published to jury, appellant objected to several portions of the
videotape.  Regarding the excerpt above,
appellant objected on the grounds that Guerra=s statements constitute evidence of
the extraneous offense of retaliation. 
He also asked the trial court to issue a limiting instruction informing
the jury that Guerra=s statements were not the statements of appellant.  Before the videotape was published, the trial
court gave the following limiting instruction to the jury: AThe statements made by the officer
are not evidence of what [appellant] says.@ 
Appellant=s trial counsel renewed his objection, which was once again
overruled by the trial court. 

a.         Standard of
Review            








We review a trial court=s ruling regarding the admission of
extraneous offenses for an abuse of discretion. 
Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005).  It is the role of the trial court to
determine whether the evidence tends to serve some purpose other than character
conformity to make the existence of a fact or consequence more or less probable
than it would be without the evidence.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc).  As long as the trial court=s ruling is within the Azone of reasonable disagreement,@ there is no abuse of discretion and
the ruling will be upheld.  Prible,
175 S.W.3d at 731.  

b.         Analysis








In his appellate brief, appellant
argues, Athe trial court erred by overruling
appellant=s objection to that portion of a
videotaped interview with appellant in which an officer warned appellant
against committing an extraneous offense, such as retaliation, though there was
no evidence of such an intent.@  An extraneous offense
is defined as any act of misconduct, whether resulting in prosecution or not,
that is not shown in the charging papers. 
Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996).  Evidence of such acts is not restricted to
acts by the defendant.  Castaldo v.
State, 78 S.W.3d 345, 349 (Tex. Crim. App. 2002) (citing Edward J. Imwinkelreid, Uncharged Misconduct
Evidence ' 2:05 (2001)).   In the
above‑cited excerpt, appellant describes several acts of misconduct on
the part of Rock and Toby.  However,
appellant did not object to any of these statements; his objection was directed
only at Guerra=s statements.
We conclude, as did the trial court, that Guerra=s statements on the videotape do not
constitute evidence of an extraneous offense because his comments do not
describe any acts of misconduct either by appellant or by third parties.[1]  Therefore, we hold the trial court did not
abuse its discretion by admitting Guerra=s statements.  

In support of his first appellate
issue, appellant also argues that Guerra=s statements should not have been
admitted because they were prejudicial. 
However, at trial, appellant objected to Guerra=s statements only on the basis that
the statements were evidence of an extraneous offense.  After the trial court overruled the
objection, appellant did not contest the admission of the evidence under any
additional rule of evidence or legal theory. 
An
argument raised on appeal must correspond with an objection made at trial.  Nelson v. State, 864 S.W.2d 496, 499
(Tex. Crim. App. 1993) (en banc) (holding appellant waived his appellate
argument complaining of admission of unduly prejudicial evidence when only an
objection to admission of an extraneous offense was raised at trial).   Because the argument
appellant raises on appeal was not presented to the trial court, it has been
waived for our review. 

For these reasons, appellant=s first issue is overruled.

B.        Was the State=s Closing Argument Improper?

In light of the trial court=s admission of the videotape excerpt
discussed above, appellant argues the trial court erred in overruling appellant=s objection to the following portion
of the State=s closing argument:








THE STATE: Do you think that you would ever forget
feeling . . . a gun in your cheek? . . . Will you ever forget that?  Why would you make that up if it didn=t happen? 
Why?  What would be the motive for
that?  [Campos] has told that same story
over and over and over again, and she knew [appellant].  There is not any kind of confusion.  She knew who he was.  He knew who she was, but you know what?  He made a mistake because the 72-years-old
that she is, she is a tough grandma because she had the guts to call the police
and tell them knowing potentially there could be some kind of retaliation for
what they did.

APPELLANT=S TRIAL
COUNSEL: Objection, Your Honor.  There
was no evidence that there was ever any retaliation, and that is improper, and
I will ask for that to be stricken.

THE COURT: That is overruled.  

Appellant argues the State=s jury argument constitutes
reversible error because it is Awithout foundation in the record.@ 
He also claims the prejudice was Aenhanced@ by the trial court=s ruling on his objection to Guerra=s statements of an extraneous
offense.  The State argues that its
closing argument was a proper summation of the evidence.

1.         Standard of
Review

A proper jury argument must fall
within one of four general areas: (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; and
(4) plea for law enforcement.  Guidry
v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999).  Error exists when facts not supported by the
record are interjected into the argument. 
Id.  Counsel is given wide
latitude, however,  in drawing inferences
from the record provided they are reasonable and offered in good faith.  Edwards v. State, 97 S.W.3d 279, 287
(Tex. App.CHouston [14th Dist.] 2003, pet ref=d). We will not reverse unless, in
light of the entire record, the argument is extreme or manifestly
improper.  Guidry, 9 S.W.3d at
154.  

2.         Analysis 

We turn first to appellant=s argument that the trial court Aopened the door@ to the State=s comments on fear of retaliation by
overruling appellant=s Aextraneous offense@ objection to Guerra=s statements.  As previously discussed, Guerra=s videotaped statements do not constitute
evidence of retaliation, thus, the trial court=s admission of the evidence could not
have Aopened the door@ to the comments made in the State=s closing argument.  








The record does reflect, however,
that other evidence of Campos=s fear of retaliation was admitted in live testimony without
objection.  Escalante, who arrived at
Campos=s residence shortly after the
robbery, testified that Campos was Ascared, hysterical, crying [and]
nervous,@ to the point where he Acouldn=t really interview her.@ 
When Guerra met with Campos three weeks later, he described her demeanor
as Avery nervous, scared, and emotional.@ 
Although Guerra wanted to interview her over the phone, he testified
that Campos insisted on meeting with him in person.  Most importantly, Guerra also testified
without objection that during their meeting, Campos indicated Ashe was afraid of retaliation because
she made the report@ and also afraid that Athese guys were going to come back
and do something to her.@  In light of this
testimony, the State=s reference to Campos=s fear of retaliation was properly
included in its summation of the evidence. 
Because the State=s closing argument was not improper, the trial court did not
err in overruling appellant=s objection. 
Accordingly, appellant=s second issue is overruled.

IV.  Conclusion

In sum, because we conclude that
Guerra=s videotaped statements did not
constitute evidence of an extraneous offense, we hold that the trial court did
not abuse its discretion in admitting the evidence.  We further conclude the trial court did not
err in overruling appellant=s objections to the State=s closing argument.

The judgment of the trial court is
affirmed.

 

 

/s/        Eva M. Guzman

Justice

 

 

Judgment
rendered and Memorandum Opinion filed April 18, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]   Before the
trial court read the charge to the jury, appellant=s trial counsel asked for an extraneous offense
instruction.  This discussion was held
outside the presence of the jury:

THE COURT: . . . [T]he question I have here is, if there is no
extraneous offense there, and then ICjust in
the interest of cautionCgive it to you anyway, you pretty much insinuate that
there is an extraneous offense there. . . . I don=t think
anything in what came out in the statement is any evidence of any sort
of retaliation. . . . 

THE STATE: I don=t see it either.

THE COURT: . . . Now if you still persist in asking for it, I will
consider it, but I think you=re running the risk ofC

APPELLANT=S TRIAL COUNSEL: We will abandon that, Judge, in the
interest of not doing that. . . . I will ask, however, then, in as much as we
have all agreed that there is no extraneous offense, that we don=t refer to that as an extraneous offense or a retaliation.

THE COURT: That will be granted. . . .

(emphasis added).