**Opinion issued October 10, 2013**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-12-00347-CR

_____

## DENNIS JAMES WILHITE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1278873**

---

## MEMORANDUM OPINION

A jury convicted Dennis James Wilhite of aggravated robbery with a deadly

weapon[1] and assessed punishment at twenty-two years' confinement. In three

---

[1]    *See* TEX. PENAL CODE ANN. 29.03(a)(2) (West 2012).

points of error, appellant contends that (1) the evidence was legally insufficient to support his conviction, (2) the trial court erred in overruling his motion for directed verdict, and (3) the trial court erred in admitting evidence at trial of a threat made against the complainant by one of appellant's co-defendants. We affirm.

## Background

On September 16, 2010, Teniqua Baines, the complainant, was at home with her ten-month old son when a man looking for "Gustavo" knocked on her door. Before she could close the door, three armed men forced their way into her home. Although the men's faces were partially covered by bandanas, Baines recognized appellant because she had attended school with his younger brother. When she called him by his name, appellant removed his bandana and told her, "I didn't know this was your house or I wouldn't even came [sic] in here like this." Appellant told Baines he needed money for a lawyer and asked her not to call the police.

One of the other men went to Baines's bedroom and removed a locked safe that belonged to Arthur "Pac" James, the father of Baines's children. Baines neither had a key to the safe nor knew how much money it contained.[2] Appellant dropped the safe to the floor to break it open. Appellant explained to Baines that

---

[2]     Baines initially told the police that the safe contained $1,500 in cash but testified at trial that she later learned from James that the safe contained money and drugs with a total value of at least $20,000.

he had to tie her and her son up with cords so that James would not think that she was involved in the theft. After the three men left with the money and drugs from the safe, Baines, still bound, hopped to the window and saw them drive off in a light-colored Chevy Impala and then managed to get to a neighbor's house to call the police.

Officer Jason Streety met with Baines and later presented her a photo array that included a photo of appellant, who she positively identified. Approximately one month later, having received information that appellant and his girlfriend were hiding out in a hotel room, officers apprehended appellant and arrested him.

## Discussion

### A. Sufficiency of the Evidence

In his first and second points of error, appellant argues that the evidence was legally insufficient to support his conviction and the trial court erred in overruling his motion for a directed verdict. Because a challenge to a court's ruling on a motion for a directed verdict is equivalent to a challenge to the sufficiency of evidence, we examine appellant's first and second issues together. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990), *overruled on other grounds*, *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991).

### 1. Standard of Review

Our legal sufficiency review must consider the entire trial record to determine whether, viewed in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that the accused committed all essential elements of the offense. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We must "evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We resolve any inconsistencies in the evidence in favor of the verdict and "defer to the jury's credibility and weight determinations." *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010); *see Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Evidence is insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318, 319 n.11, 320, 99 S. Ct. 2786, 2788–89 & n.11; *see also Laster*, 275 S.W.3d at 518.

### 2. Applicable Law

Proof of aggravated robbery requires the State to show that the defendant used or exhibited a deadly weapon in the commission of a robbery. *See* TEX.

PENAL CODE ANN. § 29.03(a)(2) (West 2012). One commits the offense of aggravated robbery if, in the course of committing theft and with the intent to obtain or to maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death and uses or exhibits a deadly weapon. *Id.* §§ 29.02(a)(2), 29.03(a)(2) (West 2011). The offense of theft occurs when a person unlawfully appropriates property with the intent to deprive the owner of the property. *Id.* § 31.03(a) (West Supp. 2012). An "owner" is defined as one who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor. *Id.* § 1.07(a)(35) (West Supp. 2012). "Possession" is defined as actual care, custody, control, or management. *Id.* § 1.07(a)(39) (West Supp. 2012).

When one person owns the property but another has possession of it, ownership may be alleged in either person. TEX. CODE CRIM. PROC. ANN. art. 21.08 (West 2012); *see Freeman v. State*, 707 S.W.2d 597, 602–03 (Tex. Crim. App. 1986). Thus, the State may allege in the indictment that the property was unlawfully taken from the actual owner of the property or a special owner of the property. *See Freeman*, 707 S.W.3d at 602–03. A "special owner" is one with "actual custody or control of property that belongs to another person." *Garza v. State*, 344 S.W.3d 409, 412 (Tex. Crim. App. 2011). Here, the indictment recited that Baines was the owner of the stolen property.

5

### 3. Analysis

Appellant contends that because there was no evidence showing that Baines had title to or possession of the property, she was neither the actual owner nor a special owner of the stolen property. The State argues that the evidence was sufficient to show that Baines had care, custody, and control of the safe and, thus, was a special owner of the property.[3]

Appellant relies on the following excerpt from Baines's testimony to refute Baines's special ownership:

Q: Did you know how much cocaine or how much weed was in the safe?

A: No, ma'am.

Q: Who was the only person that would use that safe and open it?

A: James Arthur.

Q: Okay. And how did that safe open was it—

A: With a key.

Q: Okay. It was a key. All right. And did you have a copy of that key?

---

[3] Because the State acknowledges that Baines was not the title owner of the property, we need not address the sufficiency of the evidence showing actual ownership.

6

A:    No, ma'am.

. . . .

Q:    And did you have a greater right to possess the safe that belonged to Pac as opposed to the three men that came in your home?

A:    No, ma'am.

Q:    Okay.  Well, this was your home, right?

A:    Right.

Q:    Okay.  And Pac would—you knew that he would leave items in that safe in your home, right?

A:    Yes.

Q:    Okay.  And even if you didn't know exactly what was in there, did he leave it in your custody?

A:    No.  It was hidden in my room.

Q:    Okay.  But it was in your possession, in your home?

A:    In my home.

Q:    Okay.  And you knew it was there?

A:    I knew it was there.

Q:    And did you have Pac's permission to be in charge of that house where his safe was?

A:    Yes.

Appellant argues that Baines's testimony demonstrates that she did not possess the property because she did not have care, custody, or control of the

7

contents of the safe. He further argues that because Baines did not have access to the safe and did not know of its exact contents, she did not have a greater right to possession of the property than appellant. We disagree. Baines testified that she knew some of the contents of the safe, that it was hidden in her bedroom and that James, as the actual owner, placed the safe in the home and left her in charge of the home in his absence. This demonstrates that James entrusted the safekeeping of the safe and its contents to Baines during his absence, and is sufficient to establish that Baines had custody and care of the property. *See Mayfield v. State*, 709 S.W.2d 323, 324–25 (Tex. App.—Beaumont 1986, writ ref'd) (finding that father entrusted with oversight of daughter's home was sufficient to deem him "special owner" of house and its contents). Further, the Legislature has defined the term "owner" expansively to "eliminate the distinctions between general and special owners, and to give ownership status to anyone with a rational connection to the property[.]" *Garza*, 344 S.W.3d at 413. Because James kept the safe in Baines's bedroom and under her supervision, Baines had a rational connection to the property.

Moreover, where the defendant does not assert a possessory interest in the stolen property, but the State proves that another person had a possessory interest in the property, then, "as a matter of law, between the two, the latter has established that he had the greater right to possession of the property, and in turn

8

the State has established a prima facie case of [special] ownership." *Freeman*, 707 S.W.2d at 605. Because Baines had a possessory interest in the property and appellant asserts none, a prima facie case of special ownership was established. *See id.*

The evidence presented is legally sufficient to support the jury's finding that Baines owned the property. As such, the trial court did not err in overruling appellant's motion for directed verdict. *See Madden*, 799 S.W.2d at 686. Appellant's first and second points of error are overruled.

## B. Admissibility of the Evidence

In his third point of error, appellant contends that the trial court erred in admitting evidence that Baines's life had been threatened because she was a witness to the aggravated robbery. The State asserts that the evidence was admissible and that its prejudicial effect did not substantially outweigh its probative value.

### 1. Standard of Review

A trial court's decision to admit or exclude evidence of extraneous conduct is reviewed for abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id.* at 343–44. A trial court's ruling is generally within this

zone if (1) the extraneous evidence is "relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 344.

### 2. Rule of Evidence 404(b)

Under Texas Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible "to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" *Id.* Further, rebuttal of a defensive theory is "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Blackwell v. State*, 193 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (quoting *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). A party may introduce evidence of an extraneous offense if such evidence "logically serves to make more or less probable an elemental fact, an evidentiary fact that inferentially leads to an elemental fact, or defensive evidence that undermines an elemental fact." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). Rule 404(b) applies not only to the extraneous acts of the accused, but also to the acts of third parties. *Castaldo v. State*, 78 S.W.3d 345, 348–49 (Tex. Crim. App. 2002).

During his cross-examination of Baines, defense counsel attacked Baines's credibility by questioning her about her own prior theft convictions, and then presented the defensive theory that Baines had fabricated her account of the aggravated robbery in order to conceal her own involvement in the theft of the money and drugs. During cross-examination, Baines testified as follows:

Q:     You say this guy tied you up. Did he tie you up kind of loosely or did he really make it hurt?

A:     He didn't make it hurt. It was tight enough that I couldn't get it loose.

Q     And you said the comment was, I'm – don't want to do this but I want to tie you up so your baby's daddy won't think you're in on it.

A:     Right.

Q:     Right?

A:     That's what he said.

Q:     Okay. What'd you think about that comment?

A:     Nothing. Pac know[s] better. He knew I wouldn't have nothing to do with nothing like that. I don't – that not how I live.

Q:     Well, you've stolen from people five times and been convicted, at least five times been convicted. You're saying that's not how you live, you don't steal from people?

A:     I never held 'em at gunpoint. And that's a department store. I never stole from anybody. I stole –

11

Q: Being in on something doesn't take you pointing a gun at somebody. You could fake an aggravated robbery and tell Pac all this happened to me and they took all your dope and your money. I'm scared to death, and you don't have any – you're not tied up or anything. You could have had to do that, right?

A: Could I have done that? No.

Q: Well, that's what the – this alleged robber was suggesting to you, at least that's what you're claiming was said, right?

A: Oh, that was – yes.

Q: Right?

A: Uh-huh.

Q: You're not above faking an aggravated robbery and running off with $9,200 in money and $20,000 worth of dope and trying to fool your baby's daddy, are you?

A: No. I've been around him when he had more money than that. I – that – no.

Q: No what?

A: I wouldn't do that.

Q: You wouldn't do that?

A: No.

Q: It's not in you, right? It's not in your character to do something like that?

A: It's not.

Q: It's not.

A: And then put my child in harm's way is really not.

12

Q: Well, a fake robbery doesn't put your baby in any harm's way because nobody's there. You understand the question I'm asking?

A: I understand what you're saying.

Over defense counsel's objections, the State was allowed to introduce evidence of a threat made against Baines. Officer Streety testified that, on October 12, 2010, Baines was taken into protective custody after police received information that her life was in jeopardy because she was a witness to the aggravated robbery. Officer Streety further testified that the threat made against Baines was not directly connected to appellant.

Evidence of this threat against Baines was to refute the defensive theory that she had fabricated the whole episode to conceal the fact that she had stolen the property herself. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). By attacking Baines's credibility, defense counsel sought to undermine her identification of appellant as one of the thieves and, in doing so, negate one of the elements of the offense, i.e., appellant's identity.[4] *Martin*, 173 S.W.3d at 466 (concluding party may introduce evidence of extraneous offense if such evidence logically serves to make more or less probable elemental fact, evidentiary fact that inferentially leads to elemental fact, or defensive evidence that undermines

---

[4] In his brief, appellant acknowledges that "[t]he issue in the case was identity."

13

elemental fact). Thus, evidence that Baines's life was threatened and that she was taken into protective custody was relevant and admissible.

### 3. Rule of Evidence 403

Even when evidence of an extraneous offense is permissible under Rule 404(b), however, a determination of whether the probative value of admitting the offense substantially outweighs any danger of unfair prejudice must be made pursuant to Rule of Evidence 403 by considering: (1) the strength of the extraneous evidence to make a fact of consequence more or less probable; (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that the State needed to develop evidence of the extraneous offense; and (4) the State's need for the extraneous offense evidence. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We uphold a trial court's ruling on a Rule 403 balancing test, whether explicit or implied, if it is within the zone of reasonable disagreement. *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "The danger of prejudice to the defendant is usually highest when evidence of the defendant's extraneous acts is offered to prove that the defendant acted the same way as in the case on trial." *Castaldo*, 78 S.W.3d at 350. "The danger of prejudice may be much lower when evidence of a third party's extraneous act is offered." *Id.*

14

The first factor requires consideration of the strength of the extraneous evidence to make a fact of consequence more or less probable. Here, defense counsel's theory that Baines, with her numerous prior convictions for theft, had fabricated the aggravated robbery to conceal her own theft of the money and drugs serves the dual purpose of undermining her credibility and her identification of appellant and, in doing so, negating one of the elements of the offense, i.e., appellant's identity. *Martin*, 173 S.W.3d at 466 (concluding extraneous offense evidence may be admissible when defendant raises defensive issue that negates one element of offense). Thus, the first factor weighs in favor of admissibility.

With regard to the second factor, we examine the extraneous evidence for its potential to impress the jury in some irrational but indelible way. Appellant argues that the evidence had the effect of casting aspersions on his character by association and invited the jury to convict him based solely on the bad act of a co-defendant. The trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous offense evidence improperly, or properly as evidence to rebut the defensive theory. *See Owens v. State*, 827 S.W.2d 911, 916–17 (Tex. Crim. App. 1992). Here, the charge instructed the jury to limit its consideration of the extraneous evidence to "determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant . . . ." *See Blackwell*,

15

193 S.W.3d at 15–16 (concluding trial court's instructions limiting jury's consideration of extraneous offense evidence to issues other than character conformity was factor which weighed in favor of admission of evidence). Further, Officer Streety clarified that the threat was not directly connected to appellant. In its closing argument, the State explained that the jury could not consider the extraneous offense evidence as character conformity evidence, stating "it wouldn't be fair to say, oh, I heard evidence of other crimes therefore I'm going to find him guilty of aggravated robbery. Nobody's asking you to do that, okay." In light of the court's limiting instruction in the jury charge, Officer Streety's testimony that the threat was not directly connected to appellant, and the prosecutor's statement in closing argument that the jury should not consider the extraneous offense evidence for an impermissible purpose, the second factor weighs in favor of admissibility.

With regard to the third factor, we consider the time that the State needed to develop evidence of the extraneous offense. Here, of the approximately 272 pages of testimony during the guilt-innocence phase of the trial, only one page spoke to the presentation of the evidence related to the threat made against Baines. Further, the State only mentioned the evidence twice during closing argument to rebut the defensive theory that Baines had fabricated the aggravated robbery. This factor also weighs in favor of admissibility.

Finally, the State needed the extraneous offense evidence to counterbalance the continuous attack on Baines, the State's sole witness to the crime. Defense counsel's strategy of undermining Baines's testimony began with the first sentence of his opening argument: "The evidence in this case is going to show that the alleged victim in this case, Ms. Teniqua Baines, is a liar, a cheat, and a fraud." Defense counsel questioned Baines extensively about her prior convictions for theft, repeatedly referred to her as a habitual thief, and stated during closing argument, "[i]f her lips are moving she's lying." Thus, evidence of the threat made against Baines's life to make her identification of appellant more credible was needed by the State—without it, the jury could have easily chosen to disbelieve her testimony in light of her extensive criminal history.

Balancing all of the factors, we conclude that the trial court did not abuse its discretion in determining the extraneous offense evidence was not substantially more prejudicial than probative under Rule 403. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'"). As such, we overrule appellant's third issue.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).