**Affirmed and Opinion Filed July 1, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00651-CR

### STEVEN MICHAEL GOODE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Court At Law No. 1
Kaufman County, Texas
Trial Court Cause No. 30921CC**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

A jury convicted Steven Michael Goode of possession with the intent to deliver four grams or more but less than 200 grams of methamphetamine. The trial court found the enhancement paragraph true, found that Goode committed the offense as part of a criminal street gang, and sentenced Goode to thirty years' imprisonment.

In three issues, Goode argues that the: (i) trial court erred in denying his motion to suppress; (ii) trial court erred in admitting gang affiliation evidence during the guilt-innocence phase because it was impermissible character-conformity evidence; and (iii) evidence is insufficient to support his conviction. Concluding that his arguments lack merit, we affirm the trial court's judgment.

# I. Background

Texas State Trooper Devin Gonzalez was a member of a task force investigating the Aryan Brotherhood of Texas (ABT) and ABT's methamphetamine distribution. In connection with the investigation, Goode, and another ABT member, Rusty Duke, were under surveillance.

A fellow task force member, Officer Steve Lair, told Trooper Gonzalez that Goode was en route to pick up some methamphetamine at a house Duke used as a "Trap House."[1] Duke was later observed at the Trap House. Goode's truck was also seen there, with a female passenger in the front seat. When Goode left the Trap House, Gonzalez told Trooper Schumann, who was on routine traffic patrol, that Goode's truck might be carrying narcotics. Gonzalez asked Schumann to make a traffic stop if he could.

Schumann saw Goode's truck going east on the highway and followed it. Schumann initiated a stop after he saw the truck make an unsafe lane change.

Schumann asked Goode and his female passenger, Carole Blevins, to get out of the truck. When Goode consented to a search of the truck, Schumann found half of a joint in Blevins's cigarette pack. Blevins, who was later identified as an informant, also had methamphetamine hidden in the crotch of her pants. Blevins and Goode were both arrested, and Goode was charged with possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams, enhanced by a prior felony conviction.

The trial court denied Goode's motion to suppress the drug evidence. Before trial, the State amended the indictment to include an allegation that Goode committed the offense "as a member of a criminal street gang." The trial court denied Goode's motion to quash the amended indictment.

---

[1] Gonzalez explained that a "Trap House" is a residence used solely for the distribution of narcotics.

The case was tried to a jury. During trial, the State introduced evidence of Goode's ABT membership and of ABT's structure and operating methods. Defense counsel objected that the evidence constituted impermissible character evidence and was more prejudicial than probative. The trial court overruled the objections and allowed the defense a running objection to that evidence.

The jury found Goode guilty. The trial court found the enhancement paragraph true, found that Goode committed the offense as part of a criminal street gang, and sentenced Goode to thirty years' imprisonment.

## II. Analysis

### A. Issue No. 1: Did the Trial Court Err in Denying the Motion to Suppress?

Goode's first issue argues that the trial court erroneously denied his motion to suppress because the "stop and detention of [his] truck was impermissible and did not provide [the officer] a legitimate basis for making the stop and subsequent arrest," and because Gonzalez did not have "sufficient credible information to pass on to Officer Schumann."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We give almost total deference to the trial court's findings of historical fact that are supported by the record and its application of the law to facts if the resolution of those questions turns on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We review de novo the trial court's application of the law to the facts when the issue does not turn on credibility and demeanor. *Id.* The trial court is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). In reviewing a

trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the ruling. *See State v. Kell*y, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

We first note that Goode's briefing on this issue is inadequate. We locate Goode's argument that Gonzalez lacked "sufficient credible information to pass on to Officer Schumann," and could not "reliably and justifiably provide information to Officer Schumann to make the traffic stop in the first place," in the last paragraph under the issue. The briefing is fifteen pages long with ten of the fifteen pages consisting of direct quotes of testimony given at the suppression hearing. Over four pages are quotes of general case law. As to the traffic violation, Goode states that he challenged whether a traffic violation was committed at the hearing on the motion to suppress, and "the points raised by defense counsel are re-urged here." Because Goode fails to proffer any analysis or argument to support this argument on appeal, we reject his complaint. *See* TEX. R. APP. P. 38.1(i); *McCarthy v. State*, 65 S.W.3d 47, 49 n. 2 (Tex. Crim. App. 2001).

Regardless, an officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation is in progress or has been committed. *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). An objectively valid stop is not unlawful just because the detaining officer has some ulterior motive for making the stop. *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). Ordinarily, a violation of a traffic law committed in view of a police officer is sufficient authority for a traffic stop. *See Lemmons v. State*, 133 S.W.3d 751, 756 (Tex. App.—Fort Worth 2004, pet. ref'd).

In findings of fact and conclusions of law, the trial court found that, when he stopped the vehicle, Trooper Schumann had reasonable suspicion to believe that Goode had violated transportation code § 545.053(a). *See* TEX. TRANSP. CODE ANN. § 545.053(a) (West 2011) (passing). The court also found, in pertinent part, that when he stopped the vehicle, Trooper

Schumann had reasonable suspicion to believe that Goode was violating transportation code section 547.3215. *See* TEX. TRANSP. CODE ANN. § 547.3215 (West 2011) (reflective devices).

Schumann's testimony is consistent with the trial court's findings. Schumann testified that he followed the truck as it traveled east on the highway in the right lane. Schumann then saw the truck move into the left lane, pass a vehicle that had entered the highway, and move back into the right lane "before it was safely- - - coming clear of the passed vehicle." Schumann said that this constituted passing unsafely because it did not allow sufficient distance between the truck and the passed vehicle, which caused the driver of the passed vehicle to have to slow down or change his driving behavior. Consequently, Schumann initiated a traffic stop. When he did so, he also noticed that the truck's third brake light was out.

We conclude that although the issue is inadequately briefed, the traffic stop was based on a reasonable suspicion that Goode had committed a traffic violation. Therefore, the trial court did not err in denying the motion to suppress.

**B.     Issue No. 3:     Was The Evidence Sufficient to Prove that Goode Possessed Methamphetamine with the Intent to Deliver?**

Goode's third issue challenges the sufficiency of the evidence to support his conviction. Although the stated issue mentions both the possession and intent to deliver elements, his argument discusses only the possession element. According to Goode, the evidence does not establish that he possessed narcotics at the time of his arrest.

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). We consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence in making our determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). If

–5–

the evidence is conflicting, we "presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination." *Wise*, 364 S.W.3d at 903 (quoting J*ackson v. Virginia*, 443 U.S. 307, 326 (1979)).

To prove possession, the State must show that the accused: (1) exercised care, custody, control, or management over the contraband, and (2) knew the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. §§ 481.002(38), 481.112 (West 2010 & Supp. 2014); *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). To meet this standard, the State must show that Goode's connection with the methamphetamine was more than fortuitous. *Poindexter,* 153 S.W.3d at 406. Control over a controlled substance need not be exclusive, but can be jointly exercised by more than one person. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). If the defendant was not in exclusive possession of the controlled substance, the State is required to present evidence linking him to it. *See Taylor*, 106 S.W.3d at 830–31. Mere presence at the contraband's location is not sufficient to establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). But presence or proximity, combined with other direct or circumstantial evidence, may establish possession beyond a reasonable doubt. *Id*.

Blevins, the informant, was with Goode when they were stopped by the police. She testified about (i) her prior knowledge of ABT member Rusty Duke and his methamphetamine business, (ii) Goode's statements to her about Duke being in that business, (iii) her conversations with Goode in which he said that they were going to meet Duke and pick up methamphetamine for Goode to front for Duke, (iv) how she had fronted drugs for Duke before, and (v) her telling Goode about Duke's methamphetamine operations. Blevins was a female ABT "feather wood," which is a woman who is married to or the girlfriend of an ABT member and is loosely affiliated with that organization. She testified that, as an ABT feather wood, she had no choice but to go

–6–

along on the trip. She also said that on the way to Duke's house she and Goode smoked part of a joint, which Goode then told her to put in her cigarette pack. Half of the joint remained there when they were pulled over.

Blevins described the trip to Duke's Trap House to pick up the methamphetamine, Goode's meeting with Duke right before she and Goode got in his white Ford truck, and how he placed the drugs on the truck's console as they drove off in Goode's truck.

Blevins explained that, as the police light came on, Goode gave her the methamphetamine and said, "you need to put this on you." Blevins understood that to mean she needed to "crotch it," so she put the drugs down her pants. When the officer pulled them over, he separated them from each other. While the officer was talking to Goode, the drugs were "down in [Blevins's] pants."

When the officer searched the truck and found the joint, Blevins told him it was hers. The officer then asked Blevins if she had anything else illegal on her. Blevins replied, "No." The officer then stated, "I know you have something on you." So Blevins retrieved the methamphetamine from her pants. When she did so, she asked that the officer not tell Goode, because he would "kill [her] if he found out."

Goode and Blevins were arrested and taken to jail, where they remained for a few months. During that time, several letters were exchanged between them. Many of these letters were admitted into evidence. In one letter, Goode asked Blevins not to be mad at him. Blevins understood that to mean his asking her to carry the drugs. According to Blevins, at that point Goode thought she had told the police the drugs were hers. When Goode wrote that he would make it up to her, Blevins understood that to mean that Goode thought she would be taking the blame for the methamphetamine.

Blevins testified that Goode was the one who set up the deal with Duke. None of Goode's letters asked Blevins where she had gotten the methamphetamine. Blevins also said that the task force would not have been aware of the drug transaction between Goode and Duke had it not been for her.

Blevins's testimony was sufficient to link Goode to the narcotics and to show that he exercised care, custody, and control and knew that it was contraband. Goode acknowledges Blevins's testimony, but argues it was not corroborated and that Blevins's criminal history "casts doubt upon her testimony." As the sole judge of Blevins's credibility and the weight to be given her testimony, however, the jury was free to believe her or not. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

We reject Goode's arguments regarding the accomplice witness rule (*see* TEX. CODE CRIM. PROC. Art. 38.14) because again, he relies on pages of direct quotes of testimony from the trial, cites general case law supporting his argument and fails to analyze the issue. *See* TEX. R. APP. P. 38.1(i); *WorldPeace v. Comm'n for Lawyer Discipline*, 18 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding that failure to offer argument, citations to record, or citation to authority waives issue on appeal). Moreover, had the issue been preserved and properly briefed, sufficient evidence was offered to corroborate Blevins' testimony by connecting Goode to the offense.

For the above reasons, we decide Goode's third issue against him.

C.     **Issue No. 2:  Was Evidence of Goode's Aryan Brotherhood Affiliation Admissible In the Guilt-Innocence Phase?**

Goode's second issue argues that the trial court erred in admitting evidence of his gang affiliation during the guilt-innocence phase because the evidence was impermissible character-conformity evidence, the prejudicial effect of which outweighed its probative value. *See* TEX. R. EVID. 403, 404(b). The record contains extensive evidence regarding ABT, its operating

methods, and appellant's involvement with that gang. Goode unsuccessfully objected to that evidence when offered through Officer Lair but was granted a running objection. The trial court, however, sustained specific objections to detailed evidence regarding ABT's structure. The admitted ABT evidence about which Goode complains consists primarily of general information regarding ABT's structure and specific information regarding the events leading to Goode's arrest.

We review a trial court's evidentiary rulings under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse an evidentiary ruling if the ruling is within the zone of reasonable disagreement. *Id*. For the reasons discussed below, we conclude that the trial court did not abuse its discretion in admitting the gang related evidence during the guilt-innocence phase.

We again point out that under this issue, Goode's briefing is eighteen pages long. He direct-quotes trial testimony and argument for sixteen of the eighteen pages. Another page is general, direct-quote case law that includes the rule 403 balancing factors. We are given a summary argument and directed to the applicable rule and general law but are not provided any analysis or argument to support this argument on appeal. We find this issue inadequately briefed. *See* TEX. R. APP. P. 38.1(i); *McCarthy v. State*, 65 S.W.3d 47, 49 n. 2 (Tex. Crim. App. 2001).

Regardless, Rule 404(b) generally prohibits "Evidence of other crimes, wrongs, or acts . . . to show action in conformity therewith." Rule 404(b) applies to third-party acts as well as the defendant's acts. *Castaldo v. State*, 78 S.W.3d 345, 348-49 (Tex. Crim. App. 2002).

Rule 404(b), however, provides that evidence of other crimes, wrongs or acts may be "admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." TEX. R. EVID. 404(b). The

admissibility of evidence offered for these purposes will almost always involve a balancing under Rule 403's substantial prejudice analysis. *Castaldo*, 78 S.W.3d. at 350. And,

> The weight of the prejudice to the defendant may be different if the extraneous acts are a third party's rather than his own, keeping in mind that the prejudice is greater if the third party's acts in some way prove the defendant's character.

> The danger of prejudice to the defendant is usually highest when evidence of the defendant's extraneous acts is offered to prove that the defendant acted the same way in the offense on trial. The danger of prejudice may be much lower when evidence of a third party's extraneous acts is offered. If the third party's acts are in some way probative of the defendant's character as well as the third party's, the danger of prejudice may be somewhere in between.

*Id*.

We conclude the trial court did not abuse its discretion in admitting ABT gang related evidence in the guilt-innocence phase for several reasons.

First, the evidence was relevant because the amended indictment alleges that Goode committed the offense as a member of a criminal street gang and the State must prove the indictment's allegations beyond a reasonable doubt. *Moore v. State*, 531 S.W.2d 141, 142 (Tex. Crim. App. 1976); *Butler v. State*, 429 S.W.2d 497, 502 (Tex. Crim. App. 1968). Although the trial court denied Goode's motion to quash this allegation in the indictment, he does not complain about the denial of the motion to quash or the validity of the allegation in the indictment that he was a member of a criminal street gang. The evidence regarding ABT's origins, structure, and operating methods was directly relevant to prove that Goode's participation in the ABT and that the ABT was a criminal street gang as alleged in the indictment.

Second, the evidence was admissible to prove that Goode possessed the methamphetamine, which was not found on Goode or in Goode's vehicle but was in the pants or crotch area of the passenger. As discussed above, the truck passenger, Blevins, was an informant and an ABT feather wood working with a Task Force Officer with the Department of Homeland

–10–

Security's National Gang Unit, Lair, who was investigating ABT's drug sales operations. Blevins was in frequent contact with Lair on the day in question, was giving Lair a stream of information regarding the events as they happened, and was the information source leading up to Goode's arrest. She gave detailed testimony about the ABT's involvement in the transaction, Goode's knowing possession of the methamphetamine, and his intent to deliver the drugs. She also testified that, consistent with ABT practices, she was included on the trip so that she could "crotch" the drugs if Goode got pulled over. "Crotching" is an ABT practice of having a woman place illegal drugs in her pants, because most officers are men and not allowed to search that area. Blevins was the source that directly led to the arrest.

For these reasons, we conclude that evidence regarding the ABT was relevant to proving the allegations in the indictment, the existence of, and appellant's knowing participation in, a gang related crime, and Goode's possession of the methamphetamine. We conclude that the trial court did not abuse its discretion in admitting the gang affiliation evidence in the guilt-innocence phase.

We thus decide Goode's second issue against him.

### III. Conclusion

Having resolved all of Goode's issues against him, we affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47
140651F.U05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN MICHAEL GOODE, Appellant

No. 05-14-00651-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court At Law No. 1, Kaufman County, Texas
Trial Court Cause No. 30921CC.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 1, 2015.